No. 14,786.

LOVELAND CAMP NO. 83, WOODMEN OF THE WORLD ET AL. *v.* WOODMEN BUILDING AND BENEVOLENT ASSOCIATION ET AL.
(116 P. [2d] 195)

Decided July 21, 1941.

Mr. JOHN A. CROSS, Mr. JOHN L. SCHWEIGERT, for plaintiffs in error.

Mr. HATFIELD CHILSON, for defendants in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

LOVELAND Camp No. 83, Woodmen of the World, William G. McGeorge and John H. Popp, for themselves and all other members of said camp, were plaintiffs in an action in the district court of Larimer county against the Woodmen Building and Benevolent Association, a corporation, U. O. Chambers and J. D. Riker, defendants. The relief sought in the action was the removal of a cloud from the title to a lot and building existing by reason of a deed executed in an attempted conveyance of the property in 1929 from Loveland Camp No. 83, Woodmen of the World, to the Woodmen Building and Benevolent Association, a corporation, which deed, plaintiffs allege, was void and they ask that it be so declared, and that defendants be required to account to plaintiffs for all monies received by it as rentals for the property since the date of the purported conveyance.

At the close of the evidence introduced by and on behalf of plaintiffs, defendants moved for a nonsuit. The motion was sustained and judgment of dismissal was duly entered. Plaintiffs seek a reversal of this judgment. They assign certain errors on the admission and exclusion of evidence, but if further proceedings there shall be these questions may not arise and we do not pass upon their merits. The only assignment we deem it necessary to consider in disposing of the case here is whether the nonsuit was properly granted; or, in other words, whether the plaintiffs' evidence, for the purposes of the motion accepted as true, viewed in the light most favorable to plaintiffs, entitled them to any relief.

Loveland Camp No. 83, Woodmen of the World, is a subordinate lodge of the Woodmen of the World, a corporation. The subordinate lodge is an unincorporated voluntary association operating by charter granted by the parent organization. In addition to its fraternal character the parent lodge operated as a fraternal life insurance company. In 1929 its insurance rates were greatly increased, resulting in much dissatisfaction among the members, many of whom dropped their in-

surance and ceased their affiliation with the fraternity. In Loveland Camp No. 83, due to this disaffection arising from the increase in rates, a scheme was conceived and fostered by E. S. Allen, an attorney, and others who were members of the local camp, to transfer the lodge building to a corporation to be organized and to issue stock in this corporation to all of the then members of the local camp, to each in an amount equal to the amount of his assessments that had been applied to the purchase of the building conveyed, during his membership in the camp. Such a company was organized and by vote of the members of the local camp the managers were authorized to deed the property to the defendant corporation which, in addition to assuming the indebtedness against the building, agreed to pay notes owing by the local camp to certain of the members, aggregating $450. The value of the property involved nowhere appears, nor does it appear from the evidence, if the $450 represented by said notes was paid by the new company, when or in what manner the indebtedness was liquidated.

The new company elected a board of directors and immediately assumed the management of the property. The Loveland Camp paid a monthly rental for the use of the lodge room, and it appears that the ground floor of the building and the facilities of the lodge room from time to time were rented to other persons and societies and the income therefrom received by the new company.

██ The parties to the controversy are not in disagreement that prior to the conveyance the property was owned by Loveland Camp No. 83, an unincorporated voluntary organization. Nor is there disagreement that at common law such organizations could convey their property only by deed signed by all of the individual members of the organization. "Since a voluntary association has no separate entity, and therefore cannot, as such, acquire or hold property, the ownership of any property or funds in form acquired or held by it is

vested in the members jointly, and they accordingly have the right to manage, control, and dispose of such property or funds at their joint pleasure." 5 C.J., p. 1359, §86, 7 C.J.S. Association, §7. The question whether Loveland Camp No. 83 might have conveyed its property in such manner is not before us, because no attempt was made to have all of the members of the camp join in the transfer. The attempted conveyance was under the statute (section 41, chapter 40, '35 C.S.A.), which vests unincorporated voluntary organizations, such as Loveland Camp No. 83, with the attributes of a legal entity to the extent that they may hold property "by the name and number" of the local society or lodge and may make conveyances of property by the presiding officer and secretary under the seal of the subordinate body.

█ The question, as we view it, and which is determinative of the whole issue here involved, is not whether the members of the local camp, as owners of the property, had a right to convey it, but whether in making the attempted conveyance the local camp observed the statutory prerequisites, and, if it failed to observe them, what the effect of such failure is upon the validity of the deed. The statute under which the conveyance was attempted to be made is as follows:

"Any Masonic body or lodge of Odd Fellows or other like benevolent and fraternal society duly chartered by its grand body according to the laws, constitution and usages of such fraternity, and not wishing to become a corporate body, may take and hold real estate for its use and benefit by purchase, grant, devise, gift or otherwise, in and by the name and number of said body, according to the respective registers of the grand body under which the same may be holden, and the presiding officer of such body, together with the secretary thereof, may make conveyances of any real estate belonging to such body, when authorized by said body, under such regulations as the said society or its grand body may see fit to make; but all such conveyances

shall be attested by the seal of said subordinate body."

It appears from the record that there was no constitutional provision or bylaw of either the parent body or the local camp specifically providing any regulations with respect to the conveyance of the real property of a subordinate camp, or which affirmatively provided that such transfers might be made, or that expressly prohibited their being made. We are of the opinion that in the absence of such regulations made either by the local camp or its grand body, or both, of the dignity of a constitutional provision or bylaw binding upon all of the members of the local camp, that no valid conveyance could be made except when authorized by the unanimous consent of the members of the local camp.

We have arrived at this conclusion by an analysis of the statute and a consideration of its evident purpose. The title of the act is as follows: "An act concerning the holding and conveying of real estate by Masonic bodies; and by lodges of the Independent Order of Odd Fellows, and other like benevolent and fraternal societies." S.L. 1893, p. 85, c. 46.

The words used indicate that the act relates to the *holding* and *conveying* of real estate and not to the manner or purpose of its use. It is conceded—as heretofore stated— by both parties to the controversy that at common law the members of unincorporated organizations, such as the local camp, are the joint owners of the property and that it can be conveyed only by deed signed by all of them. Being joint owners, each and every member is entitled to have the property used for the purposes for which the society is formed and for which the property was acquired. Since at common law each member must join in the deed to effect a valid conveyance, any member was empowered by refusing to join in a conveyance, to compel such use. It is not apparent from the statute that there is any intention to authorize any use or disposition of the property for other than the purposes of the lodge. The effect of the statute there-

fore is merely to breathe into such unincorporated local bodies a limited corporate life; to constitute the voluntary association a legal entity with the power of receiving title to real property by the name and number of the local body as designated by its grand body and of conveying it by its presiding officer and secretary under its seal when authorized by the local body, "under such regulations as the said society or its grand body may see fit to make." The constitutions of the grand lodge and local bodies, being the fundamental laws under which they exist, and the bylaws, when regularly adopted and within the power of the adopting body, are binding upon all the members. Under the statute either or both the local bodies and grand lodge might have adopted constitutional provisions or bylaws providing conditions under which such conveyances might be made and how they should be authorized. Had either or both bodies seen fit so to provide, we have no means of knowing what conditions, restrictions, or manner of authorizing such conveyances either would have incorporated in its constitutions or bylaws. The statute permitted them to mitigate the difficulties of the common-law method of making such conveyances as they saw fit, but did not make it mandatory that they do so, and in this case there is no evidence that they took advantage of these statutory provisions. We cannot say arbitrarily that had they acted they would have provided for a majority vote at a regular meeting, a two-thirds vote at a specially called meeting on notice to all the members, or what conditions they might have imposed. The possibilities are legion. The statute itself provides how conveyances are to be made. As to the manner of authorization and the conditions under which such an organization can lawfully convey, the statute is permissive merely. Either the local body or the grand body, or both, can determine the manner of authorization and the conditions, but neither having done so we know of no principle of law by which a conveyance authorized by less than a unani-

mous vote of the local lodge could be held valid. The power of each member, under the common law to prevent the property being conveyed and diverted to uses other than those of the society is not expressly taken away by the statute and it remains as at common law until, by permissive action under the statute, either the local or grand body has by appropriate action restricted the common-law power of each member to prevent a conveyance, by permitting authorization of such a conveyance by less than a unanimous vote of members of the local camp.

We need not, and do not, determine whether, without constitutional or bylaw regulations promulgated by either the local or grand bodies, a conveyance to which the members of the local camp have unanimously consented, would be valid as against an attack by the grand body, because that conceivably might involve considerations of the relationship existing between the grand and subordinate bodies not here in issue. Having determined that unanimous consent in the membership of the local body, under the conditions of this case, is an essential prerequisite to the validity of a conveyance of its real estate, and that such here was lacking, it would be mere gratuitous advice from the court, of no advantage to the litigants and binding upon no one, to set forth what we might think are other essential prerequisites to the validity of such a deed outside of any issues in the instant case.

It does not appear that any correction deed was ever executed under the amendment to the bylaws passed in 1934, and if any such was made the only authority vested in the managers was to act "with the approval of the camp." How approval is to be signified is not specified. But no issue is before us on this matter, for, so far as the record discloses, nothing was done under the amended bylaw. Its mere adoption could not operate retroactively to validate a previously executed invalid deed.

■ The relief sought by plaintiffs is to have an allegedly void deed judicially declared void, thus removing a cloud from the local camp's title, and for an accounting. We have held the deed to be void. Such being the case, defendants acquired no rights by virtue of it. The action is brought by the two named plaintiff members of the local camp and all other members, which includes those not voting to authorize the original conveyance. The court found that the plaintiffs' evidence disclosed that they were guilty of laches as a matter of law. Even a cursory reading of the authorities discloses that laches is a term not susceptible of exact definition. The essential element of laches is unconscionable delay in enforcing a right under the circumstances, usually involving a prejudice to the one against whom the claim is asserted. "The absence of diligence in compelling specific performance of a contract has long since become crystallized in the legal term 'laches,' which is incapable of an exact definition, and dependent upon neither the lapse of time nor the force of those statutes which in actions at law determine generally the plaintiff's rights. The defense of laches is in no sense dependent on the statute of limitation." 24 Words and Phrases, 80. (See *Hagerman v. Bates,* 5 Colo. App. 391, 38 Pac. 1100.) "The term 'laches,' in its broad legal sense as interpreted by courts of equity, signifies such unreasonable delay in the assertion of and attempted securing of equitable rights as to constitute in equity and good conscience a bar to recovery." 24 Words and Phrases, 80. (See *Graff v. Portland Town & Mineral Co.,* 12 Colo. App. 106, 54 Pac. 854.)

■■ In determining whether an action is barred by laches, not only the length of time must be considered but also the circumstances attending the delay. In view of the large number of members of the local camp here involved, and the generally known fact that many members of such lodges pay their dues, but rarely attend meetings, and in view of the fact that each member is

equally and jointly interested with all the others in the property of the lodge and by appropriate action, as here is taken without question by two members, might sue for himself and all others similarly situated to protect such rights, it was error for the trial court to assume that each and every member of the camp had knowledge of his rights and had neglected to enforce them. Furthermore it does not appear that any consideration was given for the property by the purchaser nor that the latter has expended any other than money derived from encumbering or renting the property; in short it does not appear that any detriment has resulted to defendants that cannot be compensated in the accounting for which plaintiffs ask. We have held that laches, where one is apprised of his rights, may bar an action in equity even though the statute of limitations has not run. There is a statute of limitations ('35 C.S.A., c. 40, §143) providing that one who in good faith enters upon property under a conveyance giving color of title and pays taxes for seven years may continue undisturbed and hold according to the purport of the instrument of conveyance under which he holds. In this case one of the questions in issue is whether this seven-year statute has in fact run against those who will be divested of their interests without their consent if the conveyance stands. In order that the statute bar the action, something more than the mere lapse of seven years is necessary, and whether the "something more" existed in the instant case is made an issue under the pleadings. Until that issue is determined it cannot be said as matter of law that the laches extended beyond the period of limitation so as to bring the case within the principle announced, as stated in the syllabus, in *Great West Min. Co. v. Woodmas of Alston Min. Co.*, 14 Colo. 90, 23 Pac. 908: "The statute of limitations fixes a limit beyond which the courts cannot extend the time, but within this limit the peculiar doctrine of courts of equity will prevail."

For the reasons herein set forth the judgment is reversed, and the cause remanded with directions that further proceedings, if any, be consistent with the views herein expressed.

MR. JUSTICE BAKKE and MR. JUSTICE HILLIARD dissent.

MR. CHIEF JUSTICE FRANCIS E. BOUCK not participating.