2012 COA 28

Thomas J. VESSELS, Personal Representative of the Estate of Mary Walsh Vessels, a/k/a Mary W. Vessels, a/k/a Mary Agnes Vessels, a/k/a Mary Vessels, Plaintiff–Appellant,

v.

Alva J. HICKERSON, a/k/a Al J. Hickerson, Defendant–Appellee.

No. 11CA0317.

Colorado Court of Appeals, Div. VI.

Feb. 16, 2012.

Clifford Beem & Associates, P.C., Clifford L. Beem, William E. Brayshaw, A. Mark Isley, Denver, Colorado, for Plaintiff–Appellant.

Theodore W. Rosen, P.C., Theodore W. Rosen, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge LOEB.

¶ 1 In this action brought to recover on a promissory note, plaintiff, Thomas J. Vessels, acting as personal representative of the estate of his deceased mother, Mary Walsh Vessels, appeals the trial court's judgment in favor of defendant, Alva J. Hickerson. Specifically, Vessels challenges the trial court's ruling that his claim to recover on the note was barred by the equitable defense of laches.

¶ 2 We hold that the trial court erred in ruling that the equitable defense of laches was applicable to bar Vessels's claim to recover on a promissory note, where the claim was filed within the period of the applicable statute of limitations and where the statute of limitations was not tolled by equitable principles, but rather, a new limitations period was started by operation of law under the partial payment doctrine.

¶ 3 Accordingly, we reverse and remand with directions.

I.   Background and Procedural History

¶ 4 In a promissory note dated April 13, 1989, Hickerson promised to pay plaintiff's father's company, Vessels Oil & Gas Company (VOGC), $386,063 to settle an outstanding debt. By its terms, the note was due in full ten years later, on April 12, 1999, and was to be paid in monthly installments of $5,103.75, which figure represented the amount necessary to pay the principal in full plus interest over the note's ten-year term.

¶ 5 As part of the settlement agreement, pursuant to an "Act of Mortgage, Pledge and Assignment," also executed on April 13, 1989, the note was secured by Hickerson's royalty interest in an oil and gas lease located in Louisiana. Under the terms of the note, Hickerson agreed to make payments to VOGC from "cash or other proceeds" generated by his royalty interest in the Louisiana oil and gas lease. In fact, under the terms of

the mortgage, Hickerson assigned his royalty interest to VOGC, and, thereafter, the operators of the Louisiana oil and gas well made payments on the note directly to VOGC, bypassing Hickerson entirely. Between 1989 and 2009, the well operators, on behalf of Hickerson, made partial payments on the note, but these payments were often insufficient to cover the amount due under the note's monthly installment plan.

¶ 6 In 1990, VOGC assigned the note to Vessels's father. After he died in 1994, the note passed through his estate to his wife, Mary Vessels. Throughout this time, specifically between 1991 and 2007, Hickerson received no communications, either from the well operators or from the Vesselses, concerning the debt owed under the note.

¶ 7 On February 26, 2007, Mary Vessels, through retained counsel, sent Hickerson a letter demanding payment of the note in full. It is undisputed that, up to this point, the letter was the only demand made on the note since its execution in 1989.

¶ 8 Apparently, the demand letter to Hickerson was unavailing, because on January 7, 2009, Mary Vessels filed this action, asserting four claims for relief against Hickerson: (1) breach of contract under the settlement agreement for nonpayment of the note; (2) default under the promissory note; (3) promissory estoppel; and (4) unjust enrichment. The record is clear that the only relief sought under any of the claims was a judgment for damages for the amount due under the note, plus costs and attorney fees. Soon after filing this action, Mary Vessels died, and her son, Thomas J. Vessels, was substituted as plaintiff in his capacity as the personal representative of her estate.

¶ 9 Before trial, the parties filed cross-motions for summary judgment. As pertinent here, in Hickerson's motion, he argued that Vessels's claims were barred by the applicable six-year statute of limitations, found in section 13–80–103.5, C.R.S.2011. Specifically, he argued that the note matured on April 12, 1999, that Mary Vessels's claim under the note accrued a day later, and that more than six years had passed before she filed suit against him. Further, he argued that the payments made by the well operators between 1989 and 2009 did not trigger the "partial payment doctrine" because he did not personally make the payments.

¶ 10 In a written order, the trial court rejected Hickerson's statute of limitations arguments and ruled that Vessels's claim was timely filed under the six-year statute of limitations set forth in section 13–80–103.5. The court reasoned that, under the partial payment doctrine, it is "well established in Colorado" that every time a debtor makes a partial payment, the debtor is in effect acknowledging the existence of the debt for which the law implies a new promise to pay, thus starting the limitations period anew. The court also ruled that the fact that Hickerson did not personally make the payments on the note was immaterial, because he had authorized the well operators to make payments on his behalf. Therefore, the court ruled that the well operators' partial payments were sufficient to invoke the partial payment doctrine. Thus, the court held that Vessels's claims were timely filed under the statute of limitations, and it denied Hickerson's cross-motion for summary judgment. The court also denied Vessels's cross-motion for summary judgment on grounds not pertinent here, and the case proceeded to trial.

¶ 11 The court held a two-day bench trial, primarily concerning whether the note was a recourse or non-recourse obligation. In an oral ruling, the court made extensive findings of fact and ultimately concluded that the parties intended the note to be a recourse note, meaning that Hickerson could be sued personally and his other assets, apart from the royalty interest in the Louisiana gas and oil well, could be used to satisfy the debt.

¶ 12 After making this ruling, the court considered Hickerson's affirmative defenses under the statute of limitations and the equitable doctrine of laches. The trial court reaffirmed its earlier ruling that Vessels's action under the note was timely filed pursuant to the partial payment doctrine and, therefore, again rejected Hickerson's statute of limitations defense. Regarding Hickerson's defense of laches, the court ruled that, as a matter of law, the defense of laches was unavailable:

I'm not aware of any cases that have ever held that when a claim is brought within a statute of limitations equity might—there might be room for equity to step in and do something about it. If ever there were such a case, this might be it.

. . . .

And I have to say and I probably shouldn't, but I'm going to anyway, that if I had some equitable room in this case, I might, I might be persuaded by the laches argument. This trial demonstrates—because of the delays forced by Plaintiff, everybody who knew about this transaction is either dead or can't remember about it. And that's a reality that I—if I could charge to Plaintiff, I—I might.

This case is a sort of poster child for why we need statutes of limitations and why we need the equitable defense of laches, but I read those cases and I just don't think there's room for—for equity to permit me to do anything with respect to laches. And so for all of those reasons, the two affirmative defenses, I find and conclude were not proved in this case.

¶ 13 Accordingly, the court merged the contract claim into the note claim, and entered judgment in favor of Vessels on the merged claims. In a written order memorializing its oral ruling, the trial court awarded Vessels $720,664.63, which figure represented $335,441.72 in principal plus $385,222.91 in accrued interest through August 31, 2010, plus pre- and post-judgment interest from September 1, 2010. The court also dismissed with prejudice Vessels's "equitable claims" of promissory estoppel and unjust enrichment, "in light of the judgment on the legal claims."

¶ 14 Thereafter, Hickerson filed a motion for reconsideration under C.R.C.P. 59. In his motion, Hickerson argued that, in Colorado, a court may bar timely filed legal claims under the equitable defense of laches under certain circumstances, and that the court should apply laches in the present case to bar Vessels's legal claims to recover under the note. Hickerson also argued that the court should reconsider its earlier rulings on the statute of limitations, find the partial payment doctrine inapplicable, and bar Vessels's claims as untimely filed. Vessels filed a response to Hickerson's motion, arguing that laches, as an equitable defense, could not apply to timely filed legal claims, and that the partial payment doctrine extended the statute of limitations, such that Vessels's claims were timely filed.

¶ 15 In a lengthy written order, the court first reaffirmed its earlier rulings regarding the statute of limitations, once again concluding that Vessels's claim under the note was not barred under the statute of limitations due to the partial payment doctrine. Hickerson has not appealed the court's ruling on the statute of limitations issue. Accordingly, for the purposes of this appeal, it is undisputed that Vessels's claim against Hickerson for recovery on the promissory note was timely filed under the statute of limitations. However, regarding the equitable defense of laches, the trial court agreed with Hickerson that, as a matter of law, it could apply laches to bar Vessels's timely filed legal claim under the promissory note. Consequently, the court analyzed Hickerson's laches defense on the merits, found the elements of laches were met, and reversed its earlier judgment in favor of Vessels. Accordingly, the court dismissed all of Vessels's claims with prejudice and entered judgment in favor of Hickerson.

¶ 16 Vessels now appeals the trial court's ruling regarding the availability of laches as a defense to his claim under the note on behalf of the estate as well as the court's application of laches to the present case.

## II. Laches

¶ 17 Vessels contends that the trial court erred, as a matter of law, in ruling that laches is available as a defense to his legal claim under the note filed within the statutory limitations period. Conversely, Hickerson argues that, although there are "sufficient grounds under Colorado law" to support the trial court's ruling that laches is available as a defense here, the issue presented on appeal is narrower. Specifically, Hickerson contends that the appeal "does not present an issue of equity undoing [Vessels's] rights at law, but rather a question whether one equitable principal [sic] can override another." Accordingly, Hickerson argues that the trial court properly applied laches to bar Vessels's

timely filed legal claim under the note because the applicable statute of limitations should have expired but for its extension under the partial payment doctrine, which, Hickerson contends, is a creature of equity, not law.

¶ 18 We conclude, under the circumstances presented here, that the trial court erred in ruling that laches applied to bar Vessels's timely filed claim to recover on the promissory note, where the applicable statute of limitations was extended by the partial payment doctrine, not equitable tolling principles.

¶ 19 As the trial court noted in its order granting Hickerson's motion for reconsideration, this case presents complex issues about the interplay between equitable defenses and legal claims. Our analysis of these issues proceeds in four sections. First, we recite the appropriate standard of review. Second, we discuss briefly the history behind the distinction between law and equity. Third, we summarize the law of laches as it exists in Colorado. Fourth, we analyze the trial court's order, discuss the partial payment doctrine, and ultimately conclude that laches is inapplicable under the particular circumstances presented here.

### A. Standard of Review

¶ 20 Generally, we review a trial court's ruling on post-trial motions under C.R.C.P. 59 for an abuse of discretion. *Buckley Powder Co. v. State,* 70 P.3d 547, 564 (Colo.App. 2002). A misapplication of the law may constitute an abuse of discretion. *See Freedom Colorado Info., Inc. v. El Paso Cnty. Sheriff's Dep't,* 196 P.3d 892, 899 (Colo.2008).

■ ¶ 21 A trial court's ruling that the equitable defense of laches is applicable to a particular situation is a threshold question of law that we review de novo. *See Bd. of Cnty. Comm'rs v. Colorado Oil & Gas Conservation Comm'n,* 81 P.3d 1119, 1122 (Colo.App. 2003) (threshold questions of law are reviewed de novo); *see also Chirco v. Crosswinds Communities, Inc.,* 474 F.3d 227, 231 (6th Cir.2007) (availability of laches as a de-

fense is a threshold question of law subject to de novo review). Accordingly, we review de novo the trial court's ruling that laches was applicable to Vessels's timely filed promissory note claim.

### B. History

¶ 22 The distinction between law and equity has its roots in our judicial history. For many years, our judicial system, like its English counterpart, contained separate courts of law and courts of equity, each of which developed different rules of substance, procedure, and remedy. *See Am. Family Mut. Ins. Co. v. DeWitt,* 218 P.3d 318, 322 (Colo. 2009); *see also* Dan B. Dobbs, *Law of Remedies* § 1.2 (2d ed. 1993). During the nineteenth century, the American legal system underwent sweeping reforms that abolished separate equity courts and created a single form of action known as the "civil action." *DeWitt,* 218 P.3d at 322; Dobbs, *Law of Remedies* § 2.6(1).

¶ 23 In Colorado, law and equity merged formally in 1877, when the General Assembly enacted the Code of Civil Procedure and abolished the traditional distinction between "actions at law" and "suits in equity":

> [T]he distinction between actions at law and suits in equity, and the distinct forms of actions, and suits heretofore existing, are abolished, and there shall be in this State but one form of civil action for the enforcement or protection of private rights and the redress or prevention of private wrongs, which shall be the same at law and in equity, and which shall be denominated a civil action, and which shall be prosecuted and defended as prescribed in this act.

Code Civ. P. Ch.1 § 1, G.S. 1883 (effective Oct. 1, 1877), *see also Dunlap v. Sanderson,* 456 F.Supp. 971, 972 (D.Colo.1978). Today, the merger of law and equity is reflected in Colorado's Rules of Civil Procedure, which state that "[t]here shall be one form of action known as 'civil action.'" C.R.C.P. 2; *see also DeWitt,* 218 P.3d at 322.[1]

---

1. Similarly, law and equity were merged in the federal courts in 1938 with the adoption of the Federal Rules of Civil Procedure. *See Ross v.*

*Bernhard,* 396 U.S. 531, 537–40, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).

¶ 24 However, despite the merger of law and equity, the distinction between equitable and legal claims and defenses survived and still remains for some substantive purposes. *See e.g.,* U.S. Const. amend. VII ("In *suits at common law,* where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved....") (emphasis added); *DeWitt,* 218 P.3d at 322 (merger did not eliminate difference between law and equity with regard to jury trials).

¶ 25 Laches is an equitable defense involving a party's unconscionable delay in enforcing its rights that has prejudiced the party against whom relief is sought. *City of Thornton v. Bijou Irrigation Co.,* 926 P.2d 1, 73 (Colo.1996); *Calhan Chamber of Commerce v. Town of Calhan,* 166 P.3d 200, 204 (Colo.App.2007). Therefore, laches cuts off the right to sue when the plaintiff has unconscionably delayed in suing to the defendant's prejudice. *See Bijou Irrigation Co.,* 926 P.2d at 73; *see also Teamsters & Emp'rs Welfare Trust v. Gorman Bros. Ready Mix,* 283 F.3d 877, 880 (7th Cir.2002) (laches cuts off the right to sue when the plaintiff has delayed "too long" in suing). A statute of limitations, in contrast, cuts off the right to sue at a date fixed by the legislature after the plaintiff's cause of action has accrued. *Teamsters,* 283 F.3d at 880.

¶ 26 Before the merger of law and equity, suits in equity were not subject to the statute of limitations, a legal defense. *Id.* However, a suit in equity could be dismissed under the doctrine of laches, an equitable defense, on the basis that the plaintiff unreasonably delayed bringing suit to the prejudice of the defendant. *Id.; see also* Dobbs, *Law of Remedies* § 6.10(7) (discussing laches in the context of Title VII claims). After the merger of law and equity, however, it became unclear whether, as a matter of law, the equitable defense of laches was applicable to legal claims such as a claim for recovery under a promissory note. As the trial court here noted, Colorado cases discussing the doctrine of laches reflect this confusion.

### C. Colorado Law on Laches

¶ 27 Neither Vessels nor Hickerson cites any Colorado case expressly addressing the issue whether laches can apply, as a matter of law, to a timely filed claim brought to recover on a promissory note, and we have found none. Although the parties cite cases that offer support for their respective arguments, many of these cases contain little or no reasoning or analysis reflecting the complex history of law and equity briefly outlined above. Instead, almost universally, the cases cited by the parties and those we have found, state, without analysis, that equitable defenses do or do not apply to legal claims. Accordingly, we briefly summarize some of the pertinent Colorado cases to guide our own analysis.

¶ 28 Several cases, some cited by Vessels, seem to support the argument that the equitable defense of laches is applicable only to equitable, not legal, claims. For example, in *Loveland Camp No. 83 v. Woodmen Building & Benevolent Ass'n,* 108 Colo. 297, 116 P.2d 195 (1941), the plaintiffs brought a quiet title action, traditionally a claim for equitable relief. *Id.* at 299, 116 P.2d at 196; *see also FDIC v. Mars,* 821 P.2d 826, 830 (Colo.App. 1991) (quiet title action is a claim for equitable relief). In discussing the applicability of laches, the supreme court stated that laches "signifies such unreasonable delay in the assertion of and attempted securing of *equitable rights* as to constitute in equity and good conscience a bar to recovery." *Loveland Camp,* 108 Colo. at 305, 116 P.2d at 199 (emphasis added). Moreover, the *Loveland Camp* court also suggested that laches could bar an equitable claim even though the statute of limitations had not yet run: "We have held that laches, where one is apprised of his rights, *may bar an action in equity* even though the statute of limitations has not run." *Id.* at 306, 116 P.2d at 199 (emphasis added). Thus, *Loveland Camp* seems to suggest that laches applies only to equitable claims, but it contains no reasoning explaining why this is so. *See id.*

¶ 29 Indeed, other Colorado cases contain similarly conclusory pronouncements suggesting that laches is applicable only to equitable claims. *See, e.g., Colorado Ground Water Comm'n v. Dreiling,* 198 Colo. 560, 564, 606 P.2d 836, 838 (1979) ("Laches may be invoked by a court to bar relief *where a*

party seeks equitable relief ....") (emphasis added); *Keller Cattle Co. v. Allison*, 55 P.3d 257, 260 (Colo.App.2002) ("The doctrine of laches permits a court to deny a party *equitable relief*.") (emphasis added); *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1229–30 (Colo.App.2000) ("Initially, we note that plaintiff's unjust enrichment claims, being equitable in nature ... are technically subject to an equitable laches rather than a legal statute of limitations analysis."); *Caldwell v. Armstrong*, 642 P.2d 47, 50 (Colo.App.1981) ("When a legal right is involved, as here, the statute of limitations is applicable, not the equitable defense of laches."). Again, however, these cases contain no reasoning or analysis explaining why laches applies only to equitable claims and not legal claims.[2]

¶ 30 Other Colorado cases suggest that laches is also inapplicable to equitable claims brought to assert "legal rights." For example, in *Calvat v. Juhan*, 119 Colo. 561, 206 P.2d 600 (1949), the plaintiffs brought a quiet title action, and the defendants argued that the title was lost "because of laches on the part of [a defendant.]" *Id.* at 567, 206 P.2d at 604. The supreme court stated that "it appears to be well established that courts will not invoke equitable defenses to destroy legal rights where statutes of limitation are applicable." *Id.* at 568, 206 P.2d at 604. The plaintiffs' "legal right" at issue was their claim to the land in question, as suggested by the court's reliance on a Utah Supreme Court case that also concerned a quiet title action: "The defendant's claim is one of legal title, and is governed by the statute of limitations. Laches apply to equitable demands. If a legal right gets into equity, the statute governs." *Id.* at 568, 206 P.2d at 604 (quoting *Fisher v. Davis*, 77 Utah 81, 291 P. 493, 494 (1930)).

¶ 31 Thus, *Calvat* suggests that laches is inapplicable to equitable claims brought to assert "legal rights" that are filed within the statute of limitations, at least in the context of quiet title actions. *See id.* However, *Calvat* does not explain what a claim brought to assert a "legal right" is, and later cases seem to suggest that *Calvat* applies only to the unique context of quiet title actions. *See Jacobs v. Perry*, 135 Colo. 550, 557, 313 P.2d 1008, 1012 (1957) ("The defense of laches is not available in a quiet title action."); *Fastenau v. Engel*, 125 Colo. 119, 121, 240 P.2d 1173, 1174 (1952) (noting that the defendant did not "claim[] that any statute of limitations bars plaintiff's action" and reaffirming *Calvat's* rule that equitable defenses cannot be invoked to "destroy legal rights where statutes of limitations are applicable").

¶ 32 In contrast, other cases suggest that laches may be equally available as a defense to legal claims. In *Bristol Co. v. Osman*, 190 P.3d 752 (Colo.App.2007), the plaintiff brought a claim for legal malpractice, arguing that his former attorney failed to advise it that delay in filing a patent infringement suit could give rise to a laches defense. *Id.* at 754. In discussing the defense of laches, a division of this court stated, in similarly conclusory fashion, that a "trial court may apply laches when the plaintiff unreasonably and inexcusably delays bringing a *legal claim* and the delay prejudices or injures the defendant in some material way." *Id.* at 755 (emphasis added). However, *Bristol Co.* is silent about whether laches is applicable to *timely filed* legal claims.

¶ 33 *Yampa Valley Coal Co. v. Velotta*, 83 Colo. 235, 263 P. 717 (1928), and *Cullen v. Phillips*, 30 P.3d 828 (Colo.App.2001), seem to suggest that laches may be applicable to timely filed legal claims where there are post-filing delays in the prosecution of a case. In *Yampa Valley*, the plaintiffs filed an action to recover damages for wrongful death. 83 Colo. at 236, 263 P. at 718. The case went to trial, and the trial court entered judgment for the defendant. *Id.* On appeal, the supreme court reversed the trial court's judg-

---

2. The United States Supreme Court has also suggested, in a similarly conclusory fashion, that the equitable defense of laches does not apply to legal claims. *See United States v. Mack*, 295 U.S. 480, 489, 55 S.Ct. 813, 79 L.Ed. 1559 (1935) (stating, before the merger of law and equity in the federal system in 1938, that "[l]aches within the term of the statute of limitations is no defense at law"); *see also Cnty. of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 244 n. 16, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985) ("We note ... that application of the equitable defense of laches in an action at law would be novel indeed.").

ment and remanded the case to the district court for further proceedings. *Id.* The plaintiffs, however, took no action on the case for nearly eight years thereafter, at which time the defendant moved to dismiss the action on the ground of laches. *Id.* In holding that the district court should have applied laches to bar the plaintiffs' claim, the court stated, "It is true the action in the instant case was brought within the time fixed by the statute. But the mere institution of an action does not, of itself, relieve the person from the charge of laches...." *Id.* at 238, 263 P. at 718.

¶ 34 Similarly, in *Cullen,* the plaintiff brought claims pursuant to 42 U.S.C. § 1983 against two police officers and the city that employed them. *Cullen,* 30 P.3d at 830. The defendants conceded that the plaintiff had timely filed his complaint within the applicable two-year statute of limitations, but argued that laches barred his action because he had failed to serve any defendants "for some 21 months after the complaint was filed." *Id.* at 833. A division of this court held that the trial court erred in granting the defendants' motion for summary judgment because "genuine issues of material fact remain concerning whether laches barred plaintiff's claims." *Id.* at 834.

¶ 35 Although *Yampa Valley* and *Cullen* suggest that laches may be available to bar legal claims, regardless of the statute of limitations, the statute of limitations was not implicated in either of those cases. In both *Yampa Valley* and *Cullen,* the plaintiffs' claims were timely filed under the statute of limitations, but the plaintiffs delayed in litigating their claims in a timely manner after filing them. Therefore, *Yampa Valley* and *Cullen* suggest that laches may be available only in certain, somewhat limited circumstances, namely, when the statute of limitations is not implicated at all, such as in cases, like *Yampa Valley* and *Cullen,* involving timely filed claims and post-filing delays. Of course, here, unlike *Yampa Valley* and *Cullen,* there is no issue of post-filing delays in the prosecution of this lawsuit.

¶ 36 *Robbins v. People,* 107 P.3d 384 (Colo. 2005), a case discussing laches in the criminal context of postconviction relief, offers some support for the proposition that laches can apply to legal claims only when no statute of limitations governs the claim. *Robbins* suggests that laches is not available as a defense when a statute of limitations has "abrogated" it: "[L]aches may be invoked against a stale claim where there is otherwise no time limitation to collateral attack—unless it has been clearly abrogated by statute." *Id.* at 389. However, for this proposition, *Robbins* relies, in part, on *Great West Mining Co. v. Woodmas of Alston Mining Co.,* 14 Colo. 90, 23 P. 908 (1890), which contains language that seems to undermine that proposition: "The statute [of limitations] fixes a limitation beyond which the courts cannot extend the time, but within this limit the peculiar doctrine of courts of equity should prevail." *Id.* at 98, 23 P. at 911. The court in *Great West Mining,* however, was particularly concerned with land speculators "stand[ing] idly by" and waiting to assert their rights until their land claims proved profitable. *Id.* Therefore, *Great West Mining*'s application to situations where there are no speculation concerns, such as here, is questionable.

¶ 37 As noted above, neither party refers us to a case directly on point, and we have found none. However, Vessels refers us to two Colorado cases involving promissory notes that he argues show that "this Court has specifically held that laches does not bar a claim to recover on promissory notes filed within the statute of limitations." Although pertinent to our analysis, we do not find either case dispositive here because they can also be read to suggest, albeit implicitly, that laches may be applicable to a timely filed claim brought to recover on a promissory note.

¶ 38 In *Beathune v. Cain,* 30 Colo.App. 321, 494 P.2d 603 (1971), the plaintiff brought an action to recover on a promissory note. *Id.* at 322, 494 P.2d at 604. The defendant raised laches as a defense, arguing that the note was more than six years past due at the time the plaintiff filed his action. *Id.* at 325–26, 494 P.2d at 605. A division of this court first pointed out that it was undisputed that the plaintiff's claim had been brought within the applicable statute of limitations. *Id.* at 326, 494 P.2d at 605. The division then

rejected defendant's laches argument, because he failed to plead in his answer the elements of laches, apart from "mere delay": "The allegations in defendant['s] ... answer were insufficient as a matter of law to constitute the defense of laches." *Id.* By addressing the merits of whether the defendant had adequately pleaded a laches defense, the division seemed to suggest that it might have permitted the defense of laches had the defendant sufficiently pleaded the elements of that defense. *See id.*

¶ 39 Similarly, in *Pasternak v. Robin,* 511 P.2d 529 (Colo.App.1973) (not published pursuant to C.A.R. 35(f)), the plaintiff brought an action to recover on a promissory note. *Id.* at 530. The trial court found that payment on the note had been discharged by either payment or accord and satisfaction. *Id.* On appeal, a division of this court reversed, holding that the trial court's findings were not supported by the evidence. *Id.* at 531. As "an additional basis for denying plaintiff's claims," the trial court also held that the doctrine of laches applied. *Id.* at 530. In rejecting the trial court's holding on laches, the division stated, "[T]hat doctrine is inapplicable here. Mere delay, short of the running of the applicable statute of limitations, does not in and of itself constitute laches. This suit on the notes was instituted within the applicable statutory time limitation." *Id.* at 530–31 (citation omitted). Again, by addressing the merits of the laches issue, albeit in dicta, *Pasternak* may suggest that the division there might have permitted the defense of laches had the evidence supported it. *See id.*

¶ 40 As the above discussion makes clear, the law in Colorado on the applicability of laches as a defense to legal claims is unsettled, and we have found no case where a Colorado appellate court expressly applied laches, as a matter of law, to bar a timely filed claim brought to recover on a promissory note. With this background in mind, we now turn to an analysis of the precise issue before the court, namely, whether the defense of laches is applicable to a timely filed promissory note claim, where the statute of limitations was started anew multiple times by application of the partial payment doc-

trine. First, we discuss the trial court's order and the reasoning behind the court's conclusion that laches is applicable to Vessels's claim in the first instance. Second, we engage in our own de novo analysis, ultimately concluding that the trial court erred in applying laches to Vessels's claim under the circumstances presented here.

### D. Analysis

#### 1. The Trial Court's Order

¶ 41 In its written order on Hickerson's C.R.C.P. 59 motion, the trial court, as we did above, summarized Colorado cases discussing laches and ultimately found them, as we do, unhelpful and somewhat confusing. Accordingly, the court turned to federal cases to determine whether it had the authority to apply laches to Vessels's timely filed promissory note claim.

¶ 42 The trial court noted a split in the federal circuits regarding whether a court could apply laches, as a matter of law, to bar timely filed claims typically brought in the intellectual property context. It began by discussing the unique context under which such claims arise:

> The issues in [the federal] cases are stark: the rights under federal patent, trademark and copyright statutes are legal rights, indeed most are creatures entirely of federal law with no common law antecedents, and Congress has also established statutes of limitations for those rights. When may judges use laches to alter these congressionally set deadlines?

¶ 43 Then, the court identified what it perceived to be "three groups" of federal circuits that have addressed that issue. The first group, according to the trial court, specifically the Ninth Circuit, "rather freely permits laches to bar what would otherwise be a timely claim." *See, e.g., Danjaq LLC v. Sony Corp.,* 263 F.3d 942, 954 (9th Cir.2001).

¶ 44 The second group encompassed the Second and Fourth Circuits and, according to the trial court,

> expressly recognized the historical question of whether the equitable defense of laches should apply to a legal claim, and found that it should not. They reinforced

their historical conclusions by discussing the separation of powers problem: Congress established a limitations period, and to allow judges to equitably shorten that period would do violence to the separation of powers.

See *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797–99 (4th Cir.2001); *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 260–261 (2d Cir.1997).

¶ 45 The third group, according to the trial court, encompassed the Sixth and Seventh Circuits and "stakes out a middle ground," permitting laches to bar timely filed legal claims only in "very rare" circumstances, namely, when, in the trial court's words, the statute of limitations was "extended by judge-made tolling or extension rules." *See Chirco*, 474 F.3d at 231–34; *Teamsters & Emp'rs Welfare Trust*, 283 F.3d at 880–83.

¶ 46 The trial court found the third group the most persuasive. The court reasoned that the statute of limitations in this case was "equitably" extended by the judge-made partial payment doctrine and, therefore, did not implicate the separation of powers concerns articulated by the Second and Fourth Circuits:

> [W]hen we have already stepped in to tinker with those legislative judgments by extending statutes of limitations, then I see no principled reason why we should not also be permitted to finish the equitable job by considering whether the period should really be extended as far as the tolling doctrine permits. That is exactly the case here. The six-year statute of limitations would have expired in April 2005, but for the judge-created rule that partial payments extended it. This "new promise" rule in turn is one of three recognized equitable tolling principles. . . .

Having received the equitable benefit of a four-year extension of the statute of limitations, [Vessels] cannot now complain of [Hickerson]'s equitable attempt to argue that such extension was too long. As Judge Posner put it in *Teamsters & Employers [Welfare Trust of Illinois v. Gorman Bros. Ready Mix*, 283 F.3d 877, 882 (7th Cir.2002) ], "What is sauce for the goose (the plaintiff seeking to extend the statute of limitations) is sauce for the gander (the defendant seeking to contract it)."

¶ 47 Accordingly, having found that it could apply laches to bar Vessels's timely filed legal claim in the first instance, the court then turned to the merits and found the elements of the laches defense satisfied. Therefore, the court reversed its earlier ruling, granted Hickerson's C.R.C.P. 59 motion for reconsideration, and entered judgment in his favor.

## 2. Discussion

¶ 48 On appeal, Vessels contends that the trial court erred in applying laches to his timely filed promissory note claim as a matter of law. We agree.

¶ 49 Although we commend the trial court for its well-researched and thoughtful order, we ultimately disagree with the trial court's conclusion and specifically its application of the Seventh Circuit's decision in *Teamsters* to the present case.

¶ 50 *Teamsters* concerned a collective bargaining agreement obligating the defendant to contribute to a welfare trust. *Teamsters & Emp'rs*, 283 F.3d at 879. A 1993 audit by the trust discovered that the defendant had failed to make the requisite contributions. *Id.* However, the head of the local union and chairman of the welfare trust told the defendant that, as a favor to him, he had "made the audit go away." *Id.* at 880. The collective bargaining agreement was renewed, and in 1998, the trust conducted a second audit, which again found that the defendant was not making the requisite contributions. *Id.* In 1999, the plaintiff trust brought suit against the defendant under the Employee Retirement Income Security Act (ERISA) to recover the delinquent contributions from 1993 through 1998. *Id.* at 879. After a bench trial, the court held that the plaintiff's suit was barred by laches and entered judgment in favor of the defendant. *Id.*

¶ 51 On appeal, the Seventh Circuit found that ERISA implicitly contained a ten-year statute of limitations (the court borrowed the statute from the state in which the case was originally brought), and thus the issue presented was "when if ever laches can be used

to shorten a statute of limitations." *Id.* at 881. The court reasoned that courts, under equitable principles, may extend the statute of limitations under the doctrine of equitable estoppel "if the defendant has done something that made the plaintiff reasonably believe that he had more time to sue." *Id.* Thus, because laches is a "form of equitable estoppel rather than a thing apart," the court reasoned that courts should be permitted to shorten the statute of limitations, under equitable principles, for the benefit of the defendant because courts occasionally extend the statute of limitations, under equitable principles and without separation of powers concerns, for the benefit of the plaintiff. *Id.* at 881–82. Accordingly, in somewhat colorful language adopted by the trial court here, the Seventh Circuit concluded that "[w]hat is sauce for the goose (the plaintiff seeking to extend the statute of limitations) is sauce for the gander (the defendant seeking to contract it)." *Id.* at 882.

¶ 52 At the outset, we note that *Teamsters* and the other federal cases discussed by the trial court are of questionable import in the present case. *Teamsters* involved ERISA claims, which are of purely federal, not state, concern. *Id.* at 879. Moreover, although *Teamsters* was not an intellectual property case, the federal cases informing the laches discussion in *Teamsters* as well as the trial court's order generally concern copyright claims, which raise unique concerns of speculation by the copyright owner not applicable here. *See Chirco,* 474 F.3d at 232 ("It must be obvious to every one familiar with equitable principles that it is inequitable for the owner of a copyright, with full notice of an intended infringement, to stand inactive while the proposed infringer spends large sums of money in its exploitation, and to intervene only when his speculation has proved a success." (quoting *Haas v. Leo Feist, Inc.,* 234 F. 105, 108 (S.D.N.Y.1916)

(Learned Hand, J.)))[3]; *cf. Great West Mining Co.,* 14 Colo. at 95, 23 P. at 910.

¶ 53 Moreover, upon a careful reading of *Teamsters,* we further question its applicability to the present case for several reasons. First, as discussed above, *Teamsters* involved an ERISA claim, not a claim brought to recover on a promissory note. *Teamsters & Emp'rs,* 283 F.3d at 879. Second, there was no extension of the statute of limitations in that case based on equitable tolling or equitable estoppel, nor was there any application of the partial payment doctrine. Third, although the court in *Teamsters* stated that "laches is thus a form of equitable estoppel," it did not expressly so hold and instead characterized the defendant's laches defense as an equitable estoppel defense:

> [The defendant]'s argument is not that the second suit ... should have been filed sooner, but that it shouldn't have been filed at all because [the defendant] was misled by the disappearance of the first audit. . . .
>
> Since laches and equitable estoppel are interchangeable—or, if not, since this is actually a case of the latter rather than of the former—the question arises whether equitable estoppel can ever be a defense to a suit by a multiemployer plan for delinquent contributions.

*Id.* at 882. Fourth, the court ultimately resolved the case on equitable estoppel grounds, holding that the defendant's equitable estoppel defense failed as a matter of law—not because the plaintiff's delay in filing suit had been unreasonable (which the defense of laches would require)—but because the defendant had not proved the element of reasonable reliance. *Id.* at 885. Finally, because of the court's disposition of the issue before it, we note that its extended discussion of laches was not necessary for the court's ultimate holding, undermining its

---

**3.** *Chirco,* the Sixth Circuit case relied on by the trial court, was a copyright infringement action concerning architectural designs for a condominium project. The Sixth Circuit actually held that the plaintiffs' claims for monetary damages and prospective injunctive relief, which were filed within the applicable three-year statute of limitations for copyright infringement, were not subject to laches, in large part because of the separa-

tion of powers argument articulated by the Fourth Circuit. *Chirco,* 474 F.3d at 235. Rather, the court upheld the application of laches only to the plaintiffs' extraordinary and delayed request for equitable relief to destroy the condominium units that had already been completed and sold to and occupied by innocent third parties. *Id.* at 235–36. Thus, *Chirco* is of limited persuasive value to the case here.

precedential value and especially its applicability here. *See id.* at 885 (Easterbrook, J., concurring) ("Th[e] conclusion [that the defendant's reliance was unreasonable] makes it unnecessary for us to address the many issues on which the parties' briefs are silent. I am reluctant to join an opinion that nonetheless ruminates about them at length.").

¶ 54 Putting aside the many distinguishing circumstances in both *Chirco* and *Teamsters,* we also question the trial court's characterization of the rule those cases supposedly announced. The trial court stated that, in both cases, "the 'rare' circumstance that allowed the application of laches was that the statute of limitations itself was being extended by judge-made tolling or extension rules." However, both *Chirco* and *Teamsters* involved timely filed claims, and neither case involved a statute of limitations that had been extended under equitable principles or otherwise. Nor, as noted, did either case involve an application of the partial payment doctrine. *Chirco,* 474 F.3d at 229–31; *Teamsters & Emp'rs,* 283 F.3d at 879–81. Indeed, the rare circumstance in *Chirco* was the fact that the plaintiffs had waited to file suit until after the defendants had already built and sold allegedly infringing condominium units to innocent third parties and requested those units be destroyed, not because, as the trial court suggested, the court had previously extended the statute of limitations for the plaintiffs' benefit. *Chirco,* 474 F.3d at 235–36. In *Teamsters,* as already discussed, the court did not apply laches at all. *Teamsters & Emp'rs,* 283 F.3d at 882–85.

■ ¶ 55 To the extent that the trial court here interpreted *Teamsters* to permit a laches defense where a court had previously equitably tolled the statute of limitations in the same case, we nevertheless conclude that the trial court erred because, in Colorado, the partial payment doctrine is a judge-made rule of law *interpreting* the statute of limitations, not a creature of equity. Generally, the period for initiating an action to recover a debt expires six years after the cause of action accrues. § 13–80–103.5(1)(a). However, rather than extending the statute of limitations, as would be the case with equitable tolling, "a part payment of a debt will start

the limitations period running anew." *Drake v. Tyner,* 914 P.2d 519, 522 (Colo.App.1996). Contrary to Hickerson's argument and the trial court's order, the partial payment doctrine does not extend or "toll" the statute on the basis of equitable considerations. *See id.* Instead, the "theory upon which part payment is given this effect is that the part payment amounts to a voluntary acknowledgment of the debt from which the law implies a new promise to pay the balance." *Id.; see also Adams v. Tucker,* 6 Colo.App. 393, 400, 40 P. 783, 786 (1895) ("No rule of law is better settled than that a partial payment made on a debt for which the action is brought will be sufficient to renew the entire debt."). Thus, where, as here, the fact of partial payments is undisputed, as a matter of law each time a partial payment is made, the statute of limitations period starts running "anew." *Drake,* 914 P.2d at 522. There is no balancing of the equities to determine whether to extend the limitations period.

■ ¶ 56 In contrast, equitable tolling is generally applied to prevent a defendant from asserting a statute of limitations defense where the defendant's wrongful actions have prevented the plaintiff from asserting a timely claim. *Shell W. E & P, Inc. v. Dolores Cnty. Bd. of Comm'rs,* 948 P.2d 1002, 1007 (Colo.1997); *Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094, 1096 (Colo. 1996); *Olson v. State Farm Mut. Auto. Ins. Co.,* 174 P.3d 849, 858 (Colo.App.2007). Accordingly, equitable tolling is typically only applicable where the defendant, through some form of affirmative conduct, prevented the plaintiff from filing a timely claim. *See Shell,* 948 P.2d at 1007 (court may apply equitable tolling principles where a defendant fails to provide statutorily imposed notice to plaintiff).

¶ 57 Hickerson argues that *In re Estate of Ongaro,* 973 P.2d 660 (Colo.App.1998), *aff'd,* 998 P.2d 1097 (Colo.2000), supports the proposition that the partial payment doctrine is a creature of equitable tolling. In *Ongaro,* while discussing the difference between nonclaim statutes and statutes of limitations, a division of this court stated that

unlike a statute of limitations, a nonclaim statute is not subject to equitable tolling.

Thus, although partial payment may toll the statute of limitations to enforce a note, it will not toll a nonclaim statute.

*Id.* at 664 (citation omitted). When we read *Ongaro*, it is obvious that the precise issue before the court had nothing to do with whether the partial payment doctrine was a form of equitable tolling. Instead, the issue in that case was whether the partial payment doctrine could "toll" a nonclaim statute under the Colorado Probate Code. *Id.* at 663–64. Accordingly, *Ongaro* is inapposite here. To the extent that *Ongaro* can be read to suggest the partial payment rule is a form of equitable tolling, we decline to follow it in light of longstanding Colorado precedent on the partial payment doctrine. *See In re Estate of Becker*, 32 P.3d 557, 563 (Colo.App. 2000) (one division of the court of appeals is not obligated to follow decisions of another division), *aff'd*, 54 P.3d 849 (Colo.2002). Accordingly, because Hickerson made partial payments on the note, the statute of limitations period was automatically started anew each time a payment was made by operation of law, not, as the trial court concluded, by judicial "tinker[ing]" under equitable principles.

¶ 58 Because we conclude the partial payment doctrine is not a form of equitable tolling and the statute of limitations period was started anew by each payment as a matter of law, the separation of powers concerns articulated by the Second and Fourth Circuits are implicated here. *See Lyons P'ship, L.P.*, 243 F.3d at 798 ("Separation of powers principles thus preclude us from applying the judicially created doctrine of laches to bar a federal statutory claim that has been timely filed under an express statute of limitations."); *Ivani Contracting Corp.*, 103 F.3d at 260; *see also Chirco*, 474 F.3d at 235 (refusing to apply laches to the plaintiffs' claims for monetary relief and prospective injunctive relief because "under our tripartite system of government, [the wisdom of a three-year statute of limitations for copyright infringement] is committed to the discretion of the legislature").

¶ 59 Here, the General Assembly has determined that the period for initiating an action to recover a debt expires six years after the cause of action accrues. § 13–80–103.5(1)(a). Through judicial interpretation, the statute of limitations on a cause of action to recover a debt starts "running anew" every time the defendant has made a partial payment. *See Drake*, 914 P.2d at 522. Moreover, the General Assembly has seemingly approved of the partial payment doctrine, or, at least, recognized its existence and not changed it:

> No acknowledgment or promise shall be evidence of a new or continuing contract sufficient to take a case out of the operation of the statute of limitations, unless it is in writing signed by the party to be charged; *but this section shall not alter the effect of a payment of principal or interest.*

§ 13–80–113, C.R.S.2011 (emphasis added); *see also Lieske v. Swan*, 93 Colo. 396, 400, 26 P.2d 807, 808 (1933) ("[The statute] clearly evidence[s] the legislative intent not to interfere with the general rule concerning the effect of the payment of interest on a debt otherwise barred.").

¶ 60 It is undisputed that Vessels's claim for recovery on the note was timely filed within the applicable statute of limitations period because Hickerson made partial payments on the note, for which the law implied a new promise to pay the existing debt, thereby restarting the limitations period each time a payment on the note was made through operation of law, not equity. Therefore, the trial court's rationale for applying laches to the circumstances here—"what is sauce for the goose, is sauce for the gander"—is simply not present. Rather, the General Assembly has enacted a statute of limitations for recovery of a debt, and the trial court simply applied the well-settled law in Colorado that Hickerson's payments on the note continually started a new six-year limitations period (including the final payment on the note in 2009, only a month before the suit was brought). Contrary to the trial court's conclusion in its ruling on the C.R.C.P. 59 motion, it did not extend the statute of limitations under equitable tolling principles. In deference to the separation of powers doctrine, we are wary of invoking an equitable principle, such as laches, where the

legislative branch of government has already made a clear policy judgment. *See Robbins,* 107 P.3d at 389.

¶ 61 *Beathune* and *Pasternak* do not compel a different conclusion. Although both cases discussed laches in the promissory note context, neither case directly addressed the issue we confront here, rendering their implicit suggestions that laches may apply to a timely filed claim on a promissory note mere dicta. *Beathune,* 30 Colo.App. at 326, 494 P.2d at 605; *Pasternak,* 511 P.2d at 530–31; *see also Coon v. Berger,* 41 Colo.App. 358, 360, 588 P.2d 386, 387–88 (1978) (discussion not necessary for the decision before the court is dicta and not controlling on later decisions), *aff'd,* 199 Colo. 133, 606 P.2d 68 (1980).

¶ 62 Accordingly, we conclude, under the circumstances here, that the trial court erred in ruling that laches was available as a defense to Vessels's timely filed claim brought to recover on a promissory note, where a new statute of limitations period was triggered, as a matter of law, by the partial payment doctrine. Because of the limited scope of our holding, we express no opinion on whether the defense of laches may be applied to other legal claims or in factual circumstances different from those present here. Further, because of our resolution of this issue, we need not consider the parties' arguments concerning whether the evidence at trial supported the trial court's findings that the elements of laches had been met.

### III. Attorney Fees

¶ 63 Vessels also requests an award of attorney fees incurred in bringing this appeal, as allowed under the terms of the promissory note. We conclude that such an award is appropriate.

¶ 64 The note states, in pertinent part:

If this Note is placed in the hand of an attorney for collection after default, or if all or any part of the indebtedness represented hereby is proved, established or collected at law or in equity in any court ... Maker and all endorsers ... agree to pay to the Holder reasonable attorneys' fees and collection costs incurred by the

Holder in addition to the principal and interest payable hereunder.

¶ 65 Therefore, because of our conclusion that the equitable defense of laches is inapplicable here, we further conclude that Vessels is entitled to appellate attorney fees under the note. Because the district court is in a better position to determine the amount of reasonable attorney fees incurred by Vessels in defending this appeal, we exercise our discretion and remand the case for further proceedings on that issue. *See* C.A.R. 39.5; *Stauffer v. Stegemann,* 165 P.3d 713, 719 (Colo.App.2006).

¶ 66 The judgment of the trial court is reversed, and the case is remanded for entry of judgment in favor of Vessels, as originally entered by the trial court, and for a determination of Vessels's reasonable attorney fees on appeal.

Judge BERNARD and Judge LICHTENSTEIN concur.