Nicholas WALLBANK and Mindilee Wallbank, individually and as parents of Emily Wallbank, a minor, Plaintiffs–Appellants,

v.

Steven S. ROTHENBERG, M.D., Defendant–Appellee.

No. 04CA1731.

Colorado Court of Appeals, Div. III.

Feb. 9, 2006.

Certiorari Denied Aug. 14, 2006.

§ 24–51–1105, C.R.S.2005.

Leventhal, Brown & Puga, P.C., Natalie Brown, Timms R. Fowler, Denver, Colorado, for Plaintiffs–Appellants.

Pryor, Johnson, Montoya, Carney & Karr, P.C., Elizabeth C. Moran, Greenwood Village, Colorado, for Defendant–Appellee.

TAUBMAN, J.

In this medical malpractice case, plaintiffs, Nicholas and Mindilee Wallbank, individually and as parents of Emily Wallbank, appeal the trial court's order in favor of defendant, Steven S. Rothenberg, M.D., denying their motion for good cause to exceed the statutory cap on medical malpractice damages for future lost earnings. We affirm.

On March 20, 1998, Rothenberg performed surgery on Emily, then six weeks old, to remove a growth on her neck called a cystic hygroma. During surgery, Emily's facial nerve was injured, causing the right side of her face to become paralyzed. In their lawsuit, the Wallbanks alleged that Rothenberg was negligent in not obtaining a CT scan or MRI before surgery to determine the extent of the growth on Emily's face. They also alleged that Rothenberg did not obtain their informed consent to surgery because he did not advise them of either the risks of facial nerve injury or alternatives to surgery.

Following a trial, the jury returned a verdict in favor of the Wallbanks on both the negligence and informed consent claims, awarding them a total of $1,348,560 in damages, including $73,500 for lost future earnings.

Rothenberg appealed the judgment, and in *Wallbank v. Rothenberg,* 74 P.3d 413 (Colo. App.2003) (*cert. dismissed as improvidently granted*), a division of this court affirmed, but vacated the $80,000 award for future medical expenses, reversed the trial court's determination not to reduce the amount of the judgment in accordance with the $1 million damages limitation in the Health Care Availability Act (HCAA), and remanded the case to the trial court for entry of an amended judgment of $1 million, subject to its determination of whether good cause existed to award the Wallbanks the future lost earnings of $73,500 in excess of the HCAA's limitation on total damages.

On remand, the trial court noted that the General Assembly has not defined good cause or the circumstances under which application of the damages limit would be deemed unfair. Consequently, the trial court looked to the structure, purpose, and history of the HCAA for guidance.

First, the trial court determined that the Wallbanks had the burden to present evidence demonstrating that the criteria for application of the exception to the damages cap had been satisfied. Second, it found that the mere fact that the jury's award for future lost earnings was supported by evidence was not a sufficient basis for it to find good cause. Third, the trial court concluded that the legislative history of the applicable section of the HCAA, although limited, indicated that the good cause exception was intended to apply where a plaintiff demonstrates an actual record of substantial earnings, as well as a unique or extraordinary capacity to earn.

The trial court then ruled that the Wallbanks had demonstrated neither good cause for an award of future lost earnings in excess of the $1 million limit plus interest that had already been awarded, nor that application of the total damages limit provided by the HCAA would have been unfair. The trial court noted that (1) Emily had been awarded substantial damages for future impairment and disfigurement and future noneconomic damages; (2) the Wallbanks' expert witness's testimony was primarily based on the difficulties Emily would have overcoming "first impressions" with employers; (3) the expert witness's testimony was predicated on a number of intangible and highly variable factors, such as intelligence, career choice, education, support systems, positive outlook, and other personality strengths; (4) Emily had no record of substantial earnings; (5) her life expectancy and work-life expectancy were undiminished, as were her intelligence and her language development; (6) no evidence at trial provided any basis for determining the extent to which Emily's injury would impact her future earnings; and (7) the Wallbanks had not identified any particular needs or losses that would go uncompensated by the damages already awarded. This appeal followed.

## I. Standard of Review

The Wallbanks contend that we should apply a de novo standard of review to the trial court's findings of lack of good cause

and unfairness to exceed the statutory damages cap. Rothenberg contends that we should review the trial court's decision for abuse of discretion. We agree with Rothenberg.

Statutory interpretation is a question of law that we review de novo. *People v. Bostelman*, 141 P.3d 891, 2005 WL 3312826 (Colo.App. No. 04CA1223, Dec. 8, 2005). However, when the application of a statute requires factual determinations by the court, the decision is ordinarily reviewed for abuse of discretion. *People ex rel. Cerda v. Walker*, 32 P.3d 628 (Colo.App.2001).

Furthermore, the determination of good cause in various contexts has generally been held to be a matter left to the discretion of the trial court. *Craig v. Rider*, 651 P.2d 397, 401–402 (Colo.1982) (good cause to reopen default judgment); *Williams v. Boyle*, 72 P.3d 392, 396 (Colo.App.2003) (good cause for extension of time to file certificate of review).

Moreover, determinations of unfairness are also matters for the trial court's discretion. *In re Marriage of Faulkner*, 652 P.2d 572, 574–75 (Colo.1982) (discretion to make fair distribution of marital property); *People v. Lopez*, 12 P.3d 869, 871 (Colo.App.2000) (discretion to determine whether defendant has established a "fair and just reason" for withdrawing plea).

Here, our determination turns on the interpretation of Colo. Sess Laws 1995, ch. 105, § 13–64–302(1) at 317 (now codified as § 13–64–302, C.R.S.2005), which limits the judgment recoverable by a plaintiff in a medical malpractice case to $1 million, but creates a limited exception, inter alia, for recovery of damages for future lost earnings. We interpret this statute de novo, but we do so to determine whether the General Assembly intended that the trial court's determinations of good cause and unfairness would be reviewed de novo or for abuse of discretion. The former version of § 13–64–202 stated in relevant part:

> [I]f, upon *good cause* shown, the court determines that the present value of the amount of lost past earnings and the present value of lost future earnings, or the present value of the amount of past medical and other health care costs and the present value of the amount of future medical and other health care costs, or both, when added to the present value of other past damages and the present value of other future damages, would exceed such limitation and that the application of such limitation would be *unfair*, the court may award the present value of additional future damages only for loss of such excess future earnings, or such excess future medical and other health care costs, or both.

(emphasis added); *cf.* § 13–64–302(1)(b), C.R.S.2005 (requiring similar showings of good cause and unfairness).

Thus, as the trial court concluded, determining whether the statutory exception to the damages cap applies necessarily involves factual determinations. To resolve whether the Wallbanks had demonstrated good cause or unfairness, the trial court evaluated the testimony of an expert witness, Emily's lack of an actual record and history of substantial earnings, and any particular needs or losses identified by the Wallbanks that would go uncompensated by the damages already awarded.

In our view, these factors are part of a nonexhaustive list of factors that trial courts may consider in making good cause or unfairness determinations as to the statutory cap.

The consideration of whether these factors, or different factors in other cases, constitute good cause for exceeding the damages cap or whether application of the cap would be unfair, necessarily requires a case-by-case determination within the discretion of the trial court. Accordingly, we conclude that the applicable standard of review under the statute is abuse of discretion.

## II. Good Cause and Unfairness

The Wallbanks contend that the trial court erred in substituting its own analysis of good cause and unfairness under Colo. Sess. Laws 1995, ch. 105, § 13–64–302(1) at 317 because (1) it concluded that they had the burden of proof under the exception to the statutory cap on damages; and (2) it considered factors not present in the plain language of the

statute when making its determination. We disagree with both contentions.

## A.

■ The Wallbanks argue that they do not have to satisfy a burden of proof to qualify for the exception to the damages cap. Because Colo. Sess. Laws 1995, ch. 105, § 13–64–302(1) at 317 did not expressly impose a burden of proof, the Wallbanks contend that they merely have to show good cause and unfairness. We disagree.

Generally, the burden is upon the movant to establish good cause. *Hane v. Tubman,* 899 P.2d 332 (Colo.App.1995); *see Black's Law Dictionary* 235 (8th ed.2004) (good cause is often the burden placed on a litigant, usually by court rule or order, to show why a request should be granted or an action excused). *But cf. In re Marriage of Ciesluk,* 113 P.3d 135 (Colo.2005) (under post-dissolution removal statute and parties' competing constitutional rights, both parents equally share the burden of demonstrating what is in the child's best interests).

In interpreting a statute, the reviewing court must presume that the General Assembly intended a just and reasonable result and must seek to avoid an interpretation that leads to an absurd result. *Delta Sales Yard v. Patten,* 870 P.2d 554 (Colo.App.1993), *aff'd,* 892 P.2d 297 (Colo.1995).

Here, the trial court concluded that the burden in proving the limited exception to the damages cap logically fell on the Wallbanks. We agree with the trial court's reasoning.

Contrary to the Wallbank's contention, the trial court did not require them to present additional evidence at a post-trial hearing to make this showing.

Further, the Wallbanks' interpretation of the statute is semantically unsustainable. Merely to show "good cause" and "unfairness," as the Wallbanks contend they must do, they in fact would bear the burden of proof. Accordingly, because we must seek to avoid an interpretation that leads to an absurd result, we conclude that the trial court properly assigned the Wallbanks the burden to establish good cause and unfairness under the statute.

## B.

■ The Wallbanks argue that in evaluating whether they had shown good cause and unfairness, the trial court erroneously considered factors not present in the express language of Colo. Sess. Laws 1995, ch. 105, § 13–64–302(1) at 317. Specifically, the Wallbanks contend that the trial court improperly considered the following five factors: (1) that Emily must have a record of substantial earnings, (2) that the Wallbanks must identify particular needs or losses that would not be compensated by the damages already awarded, (3) that there must be some basis for determining the extent of the financial impact on future earnings, (4) that testimony of the Wallbanks' vocational rehabilitation expert concerning Emily's future earnings was general and speculative, and (5) that Emily will be adequately compensated by the other damages awarded for future disfigurement. We disagree.

Neither Colo. Sess. Laws 1995, ch. 105, § 13–64–302(1) at 317 nor § 13–64–302(1)(b) defines the terms "good cause" or "unfairness." Accordingly, we must give effect to the General Assembly and adopt the statutory construction that best effectuates the purposes of the legislative scheme, looking first to the plain language of the statute. *Spahmer v. Gullette,* 113 P.3d 158 (Colo.2005).

*Black's Law Dictionary, supra,* at 235, defines "good cause" as a "legally sufficient reason." *See May v. Colo. Civil Rights Comm'n,* 43 P.3d 750, 754 (Colo.App.2002) (quoting *Watso v. Colo. Dep't of Soc. Servs.,* 841 P.2d 299, 311 (Colo.1992) ("good cause" is a "substantial or legal justification, as opposed to an assumed or imaginary pretense")).

*Webster's Third New International Dictionary* 2494 (1986) defines "unfair" as "marked by injustice, partiality, or deception."

Here, the statute does not specify factors that a trial court must consider when determining whether a movant has shown good cause or unfairness. Therefore, a court may exercise its discretion to consider factors it

deems relevant when determining whether a movant qualifies for the lost future earnings exception to the cap. The trial court may not make that determination in a vacuum, but must necessarily consider the circumstances in each case.

Moreover, if the General Assembly had intended specific factors to be considered, it could have listed them in the statute.

Here, the trial court exercised its discretion and considered several relevant factors, as noted above, to determine whether the Wallbanks had demonstrated good cause to receive damages for Emily's lost future earnings in excess of the statutory cap and unfairness in the application of the cap.

By evaluating these factors, the trial court determined whether the Wallbanks had a "substantial legal justification" for their motion to exceed the damages cap and whether the application of the cap would be marked by "injustice, partiality, or deception." Accordingly, the trial court did not abuse its discretion when it considered factors not present in the express statutory language.

### III. Totality of Circumstances

The Wallbanks next contend that the trial court erred in not considering the totality of the relevant circumstances when it determined that they had not shown good cause for an exception to the damages cap or that the application of the cap was unfair. Specifically, the Wallbanks argue that the trial court should have considered the fact that the jury found sufficient evidence to prove future economic damages; the nature and degree of the injury; and the fact that the cap had also reduced Emily's other damages by $195,060. We disagree.

Here, the trial court, exercising its discretion, considered these factors, as well as the factors noted above, and found that the Wallbanks had not shown good cause or unfairness.

Moreover, the manner in which the trial court evaluated these factors did not constitute an abuse of discretion. First, the trial court concluded that the purpose of the cap was to limit damages regardless of whether the jury found them to be appropriate.

Second, the trial court considered the nature and degree of Emily's injury and concluded that her disfigurement was adequately compensated by damages for future impairment and disfigurement and future noneconomic damages.

Third, as the trial court noted, the clear purpose of the damages cap is to limit damages. Therefore, to grant an exception to the cap merely because the jury's award of damages was reduced by the cap would essentially circumvent the basic intent of the HCAA.

Accordingly, the trial court did not abuse its discretion in considering these relevant circumstances.

The order is affirmed.

Judge ROY and Judge LOEB concur.