Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 26, 2016

**2016 CO 67**

**No. 14SC756, <u>In re Marriage of Johnson</u>—Interest on Child Support Debt—Laches.**

This case concerns whether a father may rely on the doctrine of laches to defend against a mother's claim for the interest on his child support debt.  The supreme court concludes that laches may be asserted as a defense to a claim for interest on child support arrearages.  The court therefore reverses the judgment of the court of appeals, which had concluded otherwise, and remands this case to that court for further proceedings consistent with this opinion.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

### 2016 CO 67

### Supreme Court Case No. 14SC756
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 13CA1309

### In re the Marriage of

### Petitioner:

William Michael Johnson,

and

### Respondent:

Carolyn S. Johnson.

### Judgment Reversed
*en banc*
September 26, 2016

**Attorneys for Petitioner:**
Holland & Hart LLP
Christina F. Gomez
Kristina R. Van Bockern
  *Denver, Colorado*

**No appearance by or on behalf of Respondent Carolyn S. Johnson**

**Attorneys for Amicus Curiae American Academy of Matrimonial Lawyers, Colorado Chapter:**
American Academy of Matrimonial Lawyers
Kathleen A. Hogan
  *Denver, Colorado*

**Attorneys for Amicus Curiae Family Law Section of the Colorado Bar Association:**
Epstein Patierno, P.C.
Christina Patierno
  *Denver, Colorado*

Cox Baker & Page, LLC
Nathan M.J. Dowell
  *Castle Rock, Colorado*

Sherr Puttmann Akins Lamb PC
Courtney Radtke McConomy
  *Greenwood Village, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.
**JUSTICE MÁRQUEZ** does not participate.

¶1     This case concerns whether a father may rely on the doctrine of laches to defend against a mother's claim for the interest on his child support debt.  Over fifty years ago, in Hauck v. Schuck, 353 P.2d 79, 81 (Colo. 1960), we decided that laches does not apply to a claim for unpaid child support that accrued within the statutory limitations period. In the present case, a division of the court of appeals extended Hauck's reasoning to a claim for interest on such arrearages and concluded that laches could not apply to bar one parent's right to collect interest on arrearages owed by the other parent.  See In re Marriage of Johnson, 2014 COA 145, ¶ 17, __ P.3d __.  In a special concurrence, Judge Berger noted that a more recent case from this court, Hickerson v. Vessels, 2014 CO 2, 316 P.3d 620, cast doubt on the division majority's conclusion.  See In re Marriage of Johnson, ¶ 24 (Berger, J., specially concurring).  We granted certiorari to consider whether laches is an appropriate defense in an action to collect interest on past-due child support and in doing so, to resolve the arguable tension in our precedent.[1]  We now conclude that laches may be asserted as a defense to a claim for interest on child support arrearages, and we therefore reverse the judgment of the court of appeals and remand this case to that court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶2     In 1983, the district court entered a decree dissolving the marriage of the petitioner, William Michael Johnson, and the respondent, Carolyn S. Johnson.  The

---

[1] Specifically, we granted certiorari to review:

> Whether the Court of Appeals erred in holding that, as a matter of law, laches can never apply as a defense to the recovery of statutory interest in a child support enforcement action.

decree further ordered Mr. Johnson to pay $400 per month in child support to Mrs. Johnson, to whom the court had granted custody of the couple's two minor children. The decree did not specify when Mr. Johnson's child support obligation would end, but the law at the time presumed that it would continue until his youngest child reached the age of majority, which was then twenty-one. See Koltay v. Koltay, 667 P.2d 1374, 1376 (Colo. 1983) (citing section 2-4-401(6), C.R.S. (1973 & 1980 Repl. Vol. 1B), for Colorado's age of majority).

¶3 In September 2012, Mrs. Johnson filed a "Verified Motion for Entry of Support Judgment." In this motion, Mrs. Johnson asserted that Mr. Johnson owed her $54,320 in child support arrearages, plus $838,965.32 in interest that had accrued between the entry of the Johnsons' divorce decree in 1983 and their youngest child's twenty-first birthday in 1997. Although Mr. Johnson responded by asserting a number of defenses, including the statute of limitations and laches, the magistrate entered judgment against him for the total amount requested of $893,285.32.

¶4 Mr. Johnson sought district court review of the magistrate's order, and the district court found that the magistrate had clearly erred in entering judgment for the full amount. Applying section 14-10-122(1)(c), C.R.S. (2016), which provides that an order requiring the payment of child support becomes a final money judgment when it is due and not paid, the district court reasoned that such a payment is subject to the twenty-year limitations period set forth in section 13-52-102(2)(a), C.R.S. (2016), for executing on judgments. The court further found that the doctrine of laches was inapplicable "to actions for recovery of past due child support." Accordingly, the court

4

vacated the magistrate's order and remanded the case with instructions to conduct an evidentiary hearing to re-determine, in accordance with the court's order, the amount of the judgment to be entered.

¶5     On remand, the magistrate conducted a hearing during which she addressed, among other things, whether Mr. Johnson's child support obligation ended when his youngest child turned twenty-one (the age of emancipation when the Johnsons divorced in 1983) or when she turned nineteen (the age of emancipation under the 1991 amendment to the applicable statute, see ch. 38, sec. 1, § 14-10-115(15)(1.5)(a), 1991 Colo. Sess. Laws 234).  In a written ruling, the magistrate concluded that Mr. Johnson's support obligation had continued until his youngest child turned twenty-one.  The magistrate reasoned that to take advantage of the new, lower age of emancipation, Mr. Johnson was required to file a motion to modify the child support order.  Any resulting modification would then have applied to installments that accrued after the motion for modification.  Because Mr. Johnson had filed no such motion, the magistrate ordered him to pay $23,260.27—representing child support owed for the period between September 12, 1992 and July 17, 1997, when the couple's youngest child turned twenty-one—plus interest pursuant to section 14-14-106, C.R.S. (2016).

¶6     Mr. Johnson again sought district court review, that court adopted the magistrate's order, and Mr. Johnson appealed to the court of appeals.  A division of that court ultimately reversed the district court's order on the emancipation question, concluding that Mr. Johnson's child support obligation had ended when the parties' last child turned nineteen.  See In re Marriage of Johnson, ¶ 5.  A majority of the division

5

agreed with the district court, however, that under <u>Hauck</u>, laches is not an available defense in actions to collect past due child support and the interest thereon. <u>See</u> <u>id.</u> at ¶¶ 17–18. The majority therefore concluded that the principal amount of the arrearages was $4,800 ($400 per month for the twelve months between July 1994, when Mr. Johnson stopped paying child support, and July 1995, when his youngest child turned nineteen), and it remanded the case with instructions that the trial court calculate interest under section 14-14-106 on the $4,800 in arrearages. <u>Id.</u> at ¶ 19. [2]

¶7     Judge Berger concurred specially. Although he agreed with the majority's reliance on <u>Hauck</u> and its consequent refusal to allow laches as a defense in the present case, he pointed out the importance of the doctrine as "a needed 'safety valve' in unusual cases." <u>Id.</u> at ¶¶ 21–22 (Berger, J., specially concurring). Judge Berger further noted the recent <u>Hickerson</u> decision, in which this court, as he put it, "put to rest arguments that laches can be a defense only to claims for equitable relief and cannot shorten the period for filing a claim if the claim had been filed within the statute of limitations." <u>Id.</u> at ¶ 23 (Berger, J., specially concurring). And as pertinent here, Judge Berger observed that although <u>Hickerson</u> neither cited nor overruled <u>Hauck</u>, its rationale was "fully applicable, at least to the interest component of child support arrearages." <u>Id.</u> at ¶ 24 (Berger, J., specially concurring).

¶8     Mr. Johnson then petitioned this court for a writ of certiorari, which we granted. When Mrs. Johnson did not enter an appearance or submit an answer brief, we invited

---

[2] As the division determined, the record reflects the parties' agreement that Mr. Johnson had paid all child support due between September 1992 and July 1994, when the parties' youngest child turned eighteen. <u>Id.</u>

three interested organizations to submit briefs as amici curiae, and two did so. As pertinent here, the Colorado Bar Association's Family Law Section agreed with Mr. Johnson that under certain circumstances, laches should be available as a defense to the interest owed on child support arrearages. The Family Law Section differed with Mr. Johnson, however, as to the circumstances in which laches could apply, advocating for additional conditions on the application of the doctrine in the context now before us.

## II. Standard of Review

¶9 The applicability of the common-law doctrine of laches to the statute governing interest on child support arrearages presents a question of law that we review de novo. See Hickerson, ¶ 10, 316 P.3d at 623 ("We review de novo questions of law concerning the application and construction of statutes.").

¶10 Our purpose in matters involving statutory construction is to give effect to the intent of the legislature. See City of Littleton v. Indus. Claim Appeals Office, 2016 CO 25, ¶ 27, 370 P.3d 157, 165–66. To that end, we may not construe a statute to abrogate the common law unless the General Assembly has clearly expressed its intent to do so. See Robbins v. People, 107 P.3d 384, 387 (Colo. 2005); see also Hickerson, ¶ 10, 316 P.3d at 623 ("Where the interaction of common law and statutory law is at issue, we acknowledge and respect the General Assembly's authority to modify or abrogate common law, but only recognize such changes when they are clearly expressed.").

## III. Analysis

¶11 Mr. Johnson concedes that he owes $4,800 in child support (twelve months of $400-per-month payments) for the period beginning in July 1994, when he stopped

making child support payments, and ending in July 1995, when his youngest child turned nineteen. As a result, the dispute in this case turns on the amount of interest, if any, he owes on that $4,800. To address this question, we begin by describing the statutory scheme for the collection of interest on child support debt. We then review our precedent, from <u>Hauck</u> to <u>Hickerson</u>, to determine whether the reasoning of our case law precludes the application of the doctrine of laches in the circumstances presented here.

## A. Interest On Child Support Debt

¶12     Section 5-12-101, C.R.S. (2016), provides, "If there is no agreement or provision of law for a different rate, the interest on money shall be at the rate of eight percent per annum, compounded annually." Section 14-14-106, in turn, provides:

> Interest per annum at four percent greater than the statutory rate set forth in section 5-12-101, C.R.S., on any arrearages and child support debt due and owing may be compounded monthly and may be collected by the judgment creditor; however, such interest may be waived by the judgment creditor, and such creditor shall not be required to maintain interest balance due accounts.

¶13     Accordingly, together, sections 14-14-106 and 5-12-101 set the interest rate on Mr. Johnson's child support arrearages at 12% (8% plus 4%), compounded monthly. According to Mr. Johnson (and undisputed by any other party), this rate yields $46,399.62 in interest accrued from 1995 until the division's judgment in 2014.[3]

---

[3] Although Mr. Johnson's calculation is uncontested, our independent review suggests that it may be somewhat low. His calculation appears to have assumed that the entire $4,800 became due in 1995. In reality, beginning in July 1994, each unpaid $400 installment accrued interest monthly as the principal grew to $4,800 over twelve months. See <u>In re Marriage of Armit</u>, 878 P.2d 101, 103 (Colo. App. 1994) ("[W]hen

8

¶14 Notwithstanding Mr. Johnson's above-described interest calculation, he contends that he is entitled to raise a laches defense to Mrs. Johnson's claim for such interest because she "unreasonably delay[ed]" in seeking to collect the $4,800 principal, which became due eighteen years before she filed suit in this case.

¶15 Section 14-14-106 says nothing about the applicability of common law defenses like laches to claims for interest on child support arrearages. Accordingly, we must decide whether the General Assembly intended to eliminate laches as a defense in this context. In this regard, our case law is instructive.

### B. Laches

¶16 "Laches is an equitable doctrine that may be asserted to deny relief to a party whose unconscionable delay in enforcing his rights has prejudiced the party against whom relief is sought." Robbins, 107 P.3d at 388. A laches defense comprises three elements: (1) full knowledge of the facts by the party against whom the defense is asserted, (2) unreasonable delay by the party against whom the defense is asserted in pursuing an available remedy, and (3) intervening reliance by and prejudice to the party asserting the defense. Hickerson, ¶ 12, 316 P.3d at 623.

¶17 Courts have interpreted the laches defense to signify so unreasonable a delay in the assertion of and attempt to secure equitable rights as to constitute in equity and good conscience a bar to recovery. Loveland Camp No. 83 v. Woodmen Bldg. & Benevolent Ass'n, 116 P.2d 195, 199 (Colo. 1941); see also In re Water Rights of Cent.

child support is ordered, due, and unpaid, interest accrues on each installment from the date it was due."). This distinction, however, does not impact our analysis in this case.

9

Colo. Water Conservancy Dist., 147 P.3d 9, 17 (Colo. 2006) ("[T]he defense of laches arises from 'an unconscionable delay in asserting one's rights which works to the defendant's prejudice or injury in relation to the subject matter of the litigation.'") (quoting City of Thornton v. Bijou Irrigation Co., 926 P.2d 1, 73 (Colo. 1996)).

¶18     Since at least 1960, we have consistently held that the doctrine of laches does not apply in actions for the recovery of past due child support. See, e.g., Hauck, 353 P.2d at 81; accord In re Marriage of Meisner, 807 P.2d 1205, 1207 (Colo. App. 1990); Carey v. Carey, 486 P.2d 38, 40 (Colo. App. 1971). Specifically, in Hauck, 353 P.2d at 80, we made clear that accrued installments of child support are final judgments that are subject to the appropriate statute of limitations. We further explained that "laches is applicable only when the attempted enforcement is by means of contempt procedures." Id. at 81. Thus, we observed that although laches might apply in an equitable proceeding for contempt, it did not apply in the proceeding before the court, namely, a legal action to collect accrued child support installments. See id. at 80–81. Accordingly, the applicability of the doctrine of laches appears to have turned on the distinction between legal and equitable actions. See id.

¶19     As we recently observed, however, law and equity have been merged in Colorado since at least 1877, when the General Assembly enacted the Code of Civil Procedure. Hickerson, ¶ 11, 316 P.3d at 623. That Code provided, "[T]he distinction between actions at law and suits in equity, and the distinct forms of actions, and suits heretofore existing are abolished, and there shall be in this State but one form of civil action[.]" Code of Civil Procedure, ch. 1, § 1 (1877). This principle was reaffirmed in

our current rules of civil procedure, which provide, "There shall be one form of action to be known as 'civil action.'" C.R.C.P. 2. As a result, "very few issues" today depend on a claim's foundation in law or equity. See Hickerson, ¶ 11, 316 P.3d at 623.

¶20    Consistent with this principle, in Hickerson, we implicitly concluded that the availability of a laches defense is not an issue that turns on the distinction between law and equity. See id. We focused instead on whether the separation of powers doctrine precluded a court from applying laches to shorten the filing period established by statute. Id. In conducting this analysis, we noted that the General Assembly had not abrogated the common law doctrine of laches. Id. at ¶ 16, 316 P.3d at 624. We further observed, as pertinent here, that although the statute of limitations for actions to recover debts prohibited the filing of an action beyond the prescribed limitations period, it did not address the operation of laches to shorten that period. Id. at ¶ 14, 316 P.3d at 624. To the contrary, several of our prior cases had recognized the applicability of laches to shorten the period for filing a claim "even though the claim has been timely filed within a legislatively prescribed statute of limitations period." Id. at ¶ 16, 316 P.3d at 624; see also O'Byrne v. Scofield, 212 P.2d 867, 871 (Colo. 1949) (quoting Great W. Mining Co. v. Woodmas of Alston Mining Co., 23 P. 908, 911 (Colo. 1890), for the principle that statutes of limitations "fix[] a limitation beyond which the courts cannot extend the time, but within this limit the peculiar doctrine of courts of equity should prevail"); Great W. Mining Co., 23 P. at 911 (explaining that courts cannot construe statutes of limitations to "permit a party in all cases to stand idly by until the limitation of the statute has nearly run, and then claim that, by virtue of the statute, he

11

is excused from the laches"). Accordingly, we held that the separation of powers doctrine did not bar the application of laches to a debt collection action filed within the statute of limitations period. Hickerson, ¶ 9, 316 P.3d at 622.

¶21 In so holding, we neither mentioned nor overruled Hauck, which, as noted above, forbade the use of laches to bar a claim to collect unpaid child support within the statutory limitations period. Nonetheless, by concluding that laches could apply notwithstanding an applicable statute of limitations, Hickerson cast doubt on the propriety of extending Hauck's reasoning to claims for interest on past-due child support. Accordingly, although the instant case does not require us to overrule Hauck, it does provide us with an opportunity to address whether Hauck's restriction on the application of laches is limited to the principal amount of child support debt. We conclude that it is.

¶22 The prohibition against applying laches to bar collection of the principal amount of child support debt is grounded in the settled principle that child support belongs to children, not their parents. See McQuade v. McQuade, 358 P.2d 470, 472 (Colo. 1960) ("The inherent right to support belongs to the child . . . ."). Accordingly, as a policy matter, a parent's delay in enforcing a judgment for child support should not prejudice the child's right to parental support. Cf. Hammond v. Hammond, 14 P.3d 199, 203 (Wyo. 2000) (explaining that parents cannot waive or bargain away the right to child support because the right does not belong to them; it belongs to the child).

¶23 The same reasoning does not support precluding the application of the doctrine of laches as a defense to the interest component of child support debt. As the California

12

Court of Appeal aptly explained, when a dilatory parent waits until the child has reached the age of majority to seek unpaid child support, reimbursing the custodial parent does not cognizably advance the child's welfare.  In re Marriage of Copeman, 108 Cal. Rptr. 2d 801, 808 (Cal. Ct. App. 2001), superseded by statute as recognized in In re Marriage of Fellows, 138 P.3d 200, 203 (Cal. 2006).

¶24     We reached a similar conclusion in Price v. Price, 249 P. 648, 649 (Colo. 1926), a contempt proceeding for failure to pay accrued installments of permanent alimony:

> If, as in the instant case, the wife for a long period of time supports the child without receiving alimony, where the husband had been ordered to pay alimony for the support of the child, and she afterwards recovers the arrears of alimony, such recovery is her own recovery and not that of the child.  The recovery amounts simply to a reimbursement of the wife.  She is the one who reaps the benefit.

¶25     Given the wife's more-than-fifteen-year delay in initiating contempt proceedings in Price, we concluded that the husband could raise laches as a defense to the contempt citation, even though the arrearages at issue appear to have been (at least partly) intended as child support.  See id. at 648–49.

¶26     Both the Copeman and Price courts recognized that laches may bar the enforcement of past-due support payments when due to the passage of time, the parent, rather than the child, would obtain the benefit of any recovery.  See Copeman, 108 Cal. Rptr. 2d at 808; Price, 249 P. at 649.  In our view, this reasoning is equally applicable here.  Indeed, prohibiting laches as a defense to the interest component of child support debt would arguably encourage the very kind of delay that the Copeman and Price

13

courts condemned. This is particularly true given that the interest rate on support arrearages is four percent higher than the statutory rate. See § 14-14-106.

¶27 Conversely, allowing a party to assert a laches defense to a claim for interest on unpaid child support would serve the dual purposes of protecting the right of children to parental support and encouraging parents to enforce child support obligations promptly. Cf. Williams v. Woodruff, 85 P. 90, 101 (Colo. 1905) (citing Rip Van Winkle as an illustration of the principle that "[p]arties cannot lie down to sleep upon their rights, and, on waking up many years after, find them in the same condition as that in which they were left").

¶28 For these reasons, we conclude that Mr. Johnson may raise the doctrine of laches as a defense to Mrs. Johnson's claim for the interest that has accrued on the $4,800 in child support arrearages at issue. We express no view, however, as to the merits of this defense. That determination must be made in the first instance by the trial court. See People v. Valdez, 178 P.3d 1269, 1276 (Colo. App. 2007) ("Whether the elements of laches have been established is a question of fact.").

¶29 In determining on remand whether Mr. Johnson can establish a laches defense, the courts below should apply the three-pronged test for laches set forth above. See supra ¶ 16. Although the Family Law Section urges us to modify this test in the present context by limiting the availability of laches to cases in which (1) "extraordinary facts or compelling circumstances" exist and (2) "the impact on the child's welfare, and the welfare of the parties, has been specifically considered," we decline to do so. In our view, the long-established elements of the doctrine of laches, which require

14

unconscionable delay and prejudice, <u>see</u> <u>Hickerson</u>, ¶ 12, 316 P.3d at 623; <u>Loveland Camp No. 83</u>, 116 P.2d at 199, can readily be applied, without modification, here.

## IV. Conclusion

¶30    For these reasons, we reverse the judgment of the court of appeals and remand the case to that court with instructions to return the case to the trial court for a determination as to whether Mr. Johnson can prove the elements of a laches defense with respect to Mrs. Johnson's claim for interest on Mr. Johnson's child support arrearages.

**JUSTICE MÁRQUEZ** does not participate.