COLORADO COURT OF APPEALS                     **2017COA28**

Court of Appeals No. 15CA1372
Arapahoe County District Court No. 13CV72
Honorable Kurt A. Horton, Judge

Naomi Pressey, by and through her conservator, Jennifer Pressey,

Plaintiff-Appellee,

v.

Children's Hospital Colorado,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE GRAHAM
Taubman and Navarro, JJ., concur

Announced March 9, 2017

Leventhal Puga P.C., James E. Puga, Benjamin I. Sachs, David P. Mason,
Denver, Colorado, for Plaintiff-Appellee

Hall & Evans LLC, Alan Epstein, Denver, Colorado; Martin Conklin P.C., John
Martin, Carolyn Sprinthall Knaut, Denver, Colorado, for Defendant-Appellant

¶ 1    In this medical malpractice action, we are asked to answer two novel questions of law.  First, in a post-verdict proceeding to exceed the $1,000,000 cap on damages under the Health Care Availability Act (HCAA), sections 13-64-101 to -503, C.R.S. 2016, can the trial court consider collateral sources that fall under the contract exception to the collateral source statute, section 13-21-111.6, C.R.S. 2016?  And second, can a parent relinquish his or her right to pre-majority medical expenses incurred on behalf of a minor after the statute of limitations has extinguished the parent's claim so that the minor may recover those expenses?  For the reasons discussed below, we conclude trial courts may not consider benefits included in the contract exception to the collateral source statute in determining whether to exceed the HCAA cap on damages.  We further conclude that a minor cannot recover for pre-majority expenses incurred on his or her behalf by a parent after the statute of limitations extinguishes that claim.  We therefore affirm in part, reverse in part, and remand with directions.

## I.    Background

¶ 2    Four days after birth, plaintiff, Naomi Pressey (Naomi), suffered irreversible brain damage caused by a lack of blood and

oxygen to her brain after experiencing cardiopulmonary arrest. Naomi, by and through her conservator, Jennifer Pressey, sued defendant, Children's Hospital Colorado (the Hospital), for the negligence of its nurses in administering medication to her prior to cardiopulmonary arrest.

¶ 3    The case was tried to a jury, which found the Hospital negligent and awarded Naomi $17,839,784.60. The damages award included past medical expenses, past noneconomic losses, future medical expenses, future lost earnings, and future noneconomic losses.

¶ 4    After trial, the court reduced Naomi's damages to $1,000,000 based on the legislative directive in section 13-64-302(1)(b), C.R.S. 2016. That section reads in pertinent part:

> The total amount recoverable for all damages
> for a course of care for all defendants in any
> civil action for damages in tort brought against
> a health care professional . . . whether past
> damages, future damages, or a combination of
> both, shall not exceed one million dollars,
> present value per patient, including any claim
> for derivative noneconomic loss or injury, of
> which no more than two hundred fifty
> thousand dollars, present value per patient . . .
> shall be attributable to direct or derivative
> noneconomic loss or injury; except that, if,
> upon good cause shown, the court determines

that the present value of past and future economic damages would exceed such limitation and that the application of such limitation would be unfair, the court may award in excess of the limitation the present value of additional past and future economic damages only.

¶ 5     Naomi filed a motion to exceed the cap for good cause. In a lengthy written opinion, the court determined that good cause had been shown and, after reducing the amount of noneconomic losses and future medical expenses awarded to Naomi, entered judgment in her favor for $14,341,538.60.

## II.     Discussion

¶ 6     The Hospital claims several post-verdict errors by the trial court. First, the Hospital argues that the court erred in excluding evidence of Medicaid benefits and private insurance available to Naomi in the post-verdict proceeding to exceed the damages cap. The Hospital contends that if the court had considered that evidence, Naomi would not have established good cause to exceed the cap. Second, the Hospital asserts the court erred in denying its motion for judgment notwithstanding the verdict on Naomi's pre-majority medical expenses because her parents incurred the

liability to pay those expenses and the statute of limitations on her parents' claims expired prior to the filing of this suit.

A. The HCAA Damages Cap and the Collateral Source Statute

¶ 7    The Hospital argues that the legislative purpose of the HCAA damages cap cannot be fulfilled if a trial court is precluded from considering the actual losses of a plaintiff based on the contract exception to the collateral source statute. Because the cap imposed by section 13-64-302 can be harmonized with the collateral source exception contained in section 13-21-111.6, we reject this argument. Sound public policy supports both the cap and the contract exception to the collateral source statute.

1. Standard of Review

¶ 8    We review questions of statutory interpretation de novo. *Pulte Home Corp. v. Countryside Cmty. Ass'n*, 2016 CO 64, ¶ 24. "In interpreting a statute, we look to 'the entire statutory scheme to give consistent, harmonious, and sensible effect to all parts' and apply 'words and phrases according to their plain and ordinary meaning.'" *Id.* (quoting *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011)).

## 2. The HCAA Damages Cap and Good Cause

¶ 9 The General Assembly enacted the HCAA "to assure the continued availability of adequate health care services to the people of this state." § 13-64-102(1), C.R.S. 2016. To that end, the General Assembly "clearly and unequivocally" reaffirmed "the limitations of liability set forth in section 13-64-302." § 13-64-102(2)(a). "[T]he clear purpose of the damages cap is to limit damages." *Wallbank v. Rothenberg,* 140 P.3d 177, 181 (Colo. App. 2006).

¶ 10 The damages cap contained in the HCAA is constitutional and does not usurp a trial court's right to review a jury award. *Garhart v. Columbia/HealthOne, L.L.C.,* 95 P.3d 571, 581-83 (Colo. 2004). This is because a trial court may uncap damages if it finds "good cause" and determines that application of the cap would be "unfair." § 13-64-302(1)(b). "In making findings as to 'good cause' and 'unfairness' (which essentially are different ways of saying the same thing), trial courts must consider the 'totality of circumstances.'" *Vitetta v. Corrigan,* 240 P.3d 322, 329 (Colo. App. 2009).

> [T]he statute does not specify factors that a trial court must consider when determining whether a movant has shown good cause or unfairness. Therefore, a court may exercise its discretion to consider factors it deems relevant when determining whether a movant qualifies for the . . . exception to the cap. The trial court may not make that determination in a vacuum, but must necessarily consider the circumstances in each case.

*Wallbank*, 140 P.3d at 180-81.

### 3. Common Law and Post-Verdict Statutory Collateral Source Rule; Medicaid Is a Collateral Source

¶ 11    "At common law, the collateral source rule provided that 'compensation or indemnity received by an injured party from a collateral source, wholly independent of the wrongdoer and to which he has not contributed, will not diminish the damages otherwise recoverable from the wrongdoer.'" *Colo. Permanente Med. Grp., P.C. v. Evans*, 926 P.2d 1218, 1230 (Colo. 1996) (quoting *Kistler v. Halsey*, 173 Colo. 540, 545, 481 P.2d 722, 724 (1971)). "The purpose of the collateral source rule was to prevent the defendant from receiving credit for such compensation and thereby reduce the amount payable as damages to the injured party." *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1074 (Colo. 1992).

¶ 12     Section 13-21-111.6 abrogates the common law collateral

source rule except as to benefits received as the result of a contract.

*Id.* In part, section 13-21-111.6 states as follows:

> In any action by any person or his legal
> representative to recover damages for a tort
> resulting in death or injury to person or
> property, the court, after the finder of fact has
> returned its verdict stating the amount of
> damages to be awarded, shall reduce the
> amount of the verdict by the amount by which
> such person . . . has been or will be wholly or
> partially indemnified or compensated for his
> loss by any other person, corporation,
> insurance company, or fund in relation to the
> injury, damage, or death sustained; *except that
> the verdict shall not be reduced by the amount
> by which such person . . . has been or will be
> wholly or partially indemnified or compensated
> by a benefit paid as a result of a contract
> entered into and paid for by or on behalf of such
> person.*

(Emphasis added.)  The italicized portion of the statute is commonly

referred to as the contract exception to the collateral source statute.

*Evans*, 926 P.2d at 1230.  By including the contract exception, the

General Assembly "chose to allow a plaintiff to obtain the benefit of

his contract, even if the award resulted in a double recovery."

*Volunteers of Am. Colo. Branch v. Gardenswartz*, 242 P.3d 1080,

1088 (Colo. 2010).  "This is consistent with the common law

7

position that it is more repugnant to shift the benefits of the plaintiff's insurance contract to the tortfeasor in the form of reduced liability when the tortfeasor paid nothing toward the . . . benefits." *Id.*

¶ 13    Private insurance, private disability benefits, Social Security disability benefits, and retirement benefits all fall within the contract exception to the collateral source statute. *Id.* (holding write-offs to his medical bills by plaintiff's health care provider "were a direct result of the benefits negotiated by his health insurance company, which is a source independent of the tortfeasor"); *Barnett v. Am. Family Mut. Ins. Co.*, 843 P.2d 1302, 1309 (Colo. 1993) (concluding Social Security disability benefits should not be set off from an award under section 13-21-111.6 because they result from a contract entered into and paid for by or on behalf of the injured party); *Keelan*, 840 P.2d at 1078 (holding the contract exception to the collateral source statute "is broad enough to protect benefits that result from an employment contract for which a person gives consideration in the form of services" and thereby excluding disability benefits from the collateral source statute); *Dep't of Human Servs. v. State Pers. Bd.*, 2016 COA 37,

¶ 42 (stating Public Employees' Retirement Association benefits "constitute a collateral source not required to be offset from a damage award"). In pre-verdict proceedings, Medicaid benefits "fall squarely within the definition of a collateral source." *Smith v. Kinningham*, 2013 COA 103, ¶ 15.

¶ 14    We now conclude that Medicaid benefits are also subject to the contract exception to the collateral source statute in post-verdict proceedings. *See id.* at ¶ 12 (leaving open whether Medicaid benefits are collateral sources under section 13-21-111.6). "A collateral source is a person or company, wholly independent of an alleged tortfeasor, that compensates an injured party for that person's injuries." *Id.* at ¶ 13 (quoting *Smith v. Jeppsen*, 2012 CO 32, ¶ 21). In this case, Medicaid benefits are paid on behalf of Naomi, and she was required to enter into a written Medicaid application agreement to repay the state for any Medicaid benefits she receives for which she would not qualify under the federal guidelines. Under section 13-21-111.6, these benefits are dependent upon "a contract entered into . . . by or on behalf of" Naomi for which she remains financially responsible. We therefore consider Medicaid benefits to be an exception to the collateral

9

source statute that ought not inure to the benefit of the tortfeasor. *Gardenswartz*, 242 P.3d at 1088.

¶ 15    The Hospital relies upon *City of Englewood v. Bryant*, 100 Colo. 552, 68 P.2d 913 (1937), and *Gomez v. Black*, 32 Colo. App. 332, 511 P.2d 531 (1973),[1] for the proposition that Medicaid is a gratuitous government benefit, not a collateral source.  We note that *Bryant* predates the adoption of Medicaid.  Further, the case summarily states that the plaintiff was "on relief" and so her liability was "so remote as to be purely speculative," *Bryant*, 100 Colo. at 554, 68 P.2d at 915.  And we decline to follow the division in *Gomez*, which relied on *Bryant*.  *See Harper Hofer & Assocs., LLC v. Nw. Direct Mktg., Inc.*, 2014 COA 153, ¶ 25 (one division of the court of appeals is not bound by the decision of another division).

¶ 16    The clear trend in the law is to apply the common law collateral source rule (or, in our case, the contract exception to the

---

[1] Subsequent history for *Gomez v. Black*, 32 Colo. App. 332, 511 P.2d 531 (1973), shows that it has been superseded by statute, Ch. 164, sec. 1, § 10-1-135(10)(a), 2010 Colo. Sess. Laws 579-80, as recognized by *Smith v. Kinningham*, 2013 COA 103.  However, because *Kinningham* only addressed section 10-1-135, not section 13-21-111.6, we address the Hospital's contention that *Gomez* is still good law.

collateral source statute, which in essence preserves the common law collateral source rule as to contracts in Colorado) to Medicaid benefits.  *See, e.g.*, *Kenney v. Liston*, 760 S.E.2d 434, 442-44 (W. Va. 2014) (discussing examples, which "are legion," of collateral sources inadmissible to reduce a defendant's liability and collecting cases); *see also* Restatement (Second) of Torts § 920A cmt. c (Am. Law Inst. 1979) (stating "[s]ocial legislation benefits" are collateral sources).

### 4. The Contract Exception to the Collateral Source Statute Applies to Post-Verdict Proceedings Under the HCAA

¶ 17     Having determined that Medicaid benefits fall under the contract exception under the collateral source statute, we are next asked to determine whether the HCAA damages cap and the collateral source statute are in conflict.  The Hospital contends that the contract exception prevents the HCAA from accomplishing its purpose of limiting damages in medical malpractice actions.  Therefore, the Hospital argues that the court should have ignored the contract exception and instead considered the availability of Medicaid and private insurance, which will be ongoing, in

determining whether Naomi established good cause to uncap the HCAA.

¶ 18    We perceive no conflict between the HCAA provision that caps damages and the contract exception to the collateral source statute.[2]  First, the contract exception applies to "any action . . . to recover damages for a tort . . . to [a] person," § 13-21-111.6, and does not exclude medical malpractice actions.  Second, the HCAA is silent on the application of the contract exception.  Third, there is nothing on the face of either that makes them inconsistent.  And fourth, our review of the case law has revealed no case in which the contract exception to the collateral source statute was found inapplicable to a post-verdict proceeding.

¶ 19    We reject the Hospital's argument that if the contract exception allows awards to exceed the cap, the HCAA would be rendered meaningless in cases with significant verdicts.  The purpose of the contract exception is to prevent a tortfeasor from enjoying a benefit based on the plaintiff's foresight to purchase

---

[2] The Hospital does not dispute that private insurance satisfies the contract exception to the collateral source statute but contends that the HCAA is inconsistent with that exception.

insurance or other services. *Wal-Mart Stores, Inc. v. Crossgrove*, 2012 CO 31, ¶ 10 (citing *Gardenswartz*, 242 P.3d at 1083). This policy applies with equal force to medical malpractice claims. Indeed, had the General Assembly intended otherwise, it could easily have stated so. To be sure, the HCAA does state that medical care institutions and licensed medical care professionals are entitled to reduced liability for the benefit of the citizens of Colorado. §§ 13-64-102(1), -302. However, they are not entitled to reduced liability based on a contract procured by or on behalf of the injured party. § 13-21-111.6.

¶ 20  The Hospital's position is also untenable because it seeks to shift the cost of its negligence onto the taxpayer. The common law collateral source rule sought to prevent a tortfeasor from shifting costs to third-party payers. The Hospital now argues that private insurance and Medicaid should pay for the injuries Naomi sustained because of its negligence. Even under the HCAA's purpose to cap damages to reduce liability, it is not the clear intent of the General Assembly to lay that liability at the feet of the citizens of Colorado.

¶ 21    Lastly, the Hospital argues that because Naomi presented evidence of the uninsured, billed prices for her future medical needs, the jury contemplated inflated rates in reaching its verdict. Thus, the Hospital contends, allowing the trial court in a post-verdict proceeding to consider the actual insured costs for medical needs presents the most accurate award of damages and prevents a windfall to Naomi.  But "[t]o the extent that either party receive[s] a windfall, it [is] considered more just that the benefit be realized by the plaintiff in the form of double recovery rather than by the tortfeasor in the form of reduced liability." *Keelan*, 840 P.2d at 1074.  In this case any double recovery is doubtful, given the rights of subrogation and reimbursement.  And because ample record evidence supported Naomi's uninsured billed costs, the trial court did not err in considering those expenses when determining whether to exceed the HCAA cap.  *See generally* 1 Dan B. Dobbs, *Dobbs Law of Remedies* §§ 3.1-3.3 (2d ed. 1993) (discussing the principles of damages).

¶ 22    In sum, we conclude that the contract exception to the collateral source statute, § 13-21-111.6, is applicable in post-verdict proceedings to reduce damages in medical malpractice

actions under the HCAA, § 13-64-302(1)(b). Medicaid benefits are paid on behalf of the injured party and are, therefore, collateral sources subject to the contract exception under section 13-21-111.6. Accordingly, the trial court was correct not to consider Medicaid payments (and private insurance) in determining whether to exceed the HCAA's $1,000,000 limitation on damages.

## B. Pre-Majority Economic Damages

¶ 23 The Hospital further argues that the trial court erred in denying its motion for judgment notwithstanding the verdict because Naomi failed to establish that she, rather than her parents, was entitled to her pre-majority economic damages. The Hospital contends that Colorado follows the common law in holding that parents own the legal right to seek reimbursement for a minor's pre-majority economic damages, and that Naomi's parents failed to institute such a claim within the applicable statute of limitations.

¶ 24 The Hospital also asserts that Naomi failed to present any evidence that she will be personally responsible for those expenses or that she was the real party in interest to those claims. Because we conclude that (1) Colorado continues to follow the common law rule that parents own the right to pre-majority damages to a minor;

15

(2) no valid relinquishment of that right occurred here; and (3) the statute of limitations expired on those claims, we reverse that portion of the judgment awarding pre-majority economic damages to Naomi.

### 1. Standard of Review

¶ 25 We review de novo the denial of a motion for judgment notwithstanding the verdict. *Vaccaro v. Am. Family Ins. Grp.*, 2012 COA 9M, ¶ 40. We also review de novo questions of law. *In re Marriage of Johnson*, 2016 CO 67, ¶ 9.

### 2. Colorado and the Common Law Rule

¶ 26 Under the general common law rule, only a parent may recover for a minor child's pre-majority medical expenses. *Wilson v. Knight*, 982 P.2d 400, 405 (Kan. Ct. App. 1999). Colorado appears to follow the common law rule that the parents have the right to seek pre-majority damages and expenses of a minor, subject to certain exceptions. *Pawnee Farmers' Elevator Co. v. Powell*, 76 Colo. 1, 7, 227 P. 836, 839 (1924); *see* CJI-Civ. 4th 6:3 (2014).[3]

---

[3] While "pattern jury instructions are not law, not authoritative, and not binding on this court," *People v. Hoskins*, 2016 CO 63, ¶ 20 (quoting *Krueger v. Ary*, 205 P.3d 1150, 1154 (Colo. 2009)), we still

The minor may recover for pre-majority expenses where the minor has been emancipated. *Powell*, 76 Colo. at 7, 227 P. at 839. The minor may also recover pre-majority expenses where the minor actually incurs those expenses. *Wales v. Howard*, 164 Colo. 167, 172, 433 P.2d 493, 496 (1967). Thus, in Colorado, an injury to a minor creates separate causes of action: (1) the parents generally may recover for the child's damages suffered and expenses of the child during minority; (2) the minor may recover expenses the minor actually incurs during minority and for pain and suffering and post-majority impairment of future earning capacity; and (3) an emancipated minor has the right to sue for all damages and expenses. *Kinsella v. Farmers Ins. Exch.*, 826 P.2d 433, 435 (Colo. App. 1992); *accord Elgin v. Bartlett*, 994 P.2d 411, 416 (Colo. 1999).

¶ 27     A parent may relinquish his or her right to pre-majority expenses, *Powell*, 76 Colo. at 7-8, 227 P. at 839, "but . . . the mere fact that the [parent], as the next friend of the minor, brought the

---

perceive some value in noting that Colorado Civil Jury Instruction 6:3 — Personal Injuries - Minor Child - Measure of Parents' Damages — tracks the general common law rule. CJI-Civ. 4th 6:3 (2014).

action is not equivalent to relinquishment." *Wales*, 164 Colo. at 172, 433 P.2d at 496.

¶ 28    Those states that follow the common law rule typically allow four exceptions:

> The parents' cause of action for medical expenses can be shifted to the minor if: (1) the minor child has paid or agreed to pay the expenses; (2) the minor child is legally responsible for payment (emancipation, death or incompetency of the parents); (3) if the parents waive or assign their right to recovery in favor of the minor; or (4) when recovery of expenses is permitted by statute.

*Betz v. Farm Bureau Mut. Ins. Agency of Kan., Inc.*, 8 P.3d 756, 760 (Kan. 2000); *see, e.g., Boley v. Knowles*, 905 S.W.2d 86, 89-90 (Mo. 1995) (discussing common law rule and its exceptions and collecting cases).

¶ 29    There is a trend to abandon the common law rule and hold that the right to recover pre-majority expenses belongs both to the injured minor and the parents. *See Estate of DeSela v. Prescott Unified Sch. Dist. No. 1*, 249 P.3d 767, 770 (Ariz. 2011) ("Because the common law should adapt when circumstances make it no longer just or consistent with sound policy, we hold that the right to recover pre-majority medical expenses belongs to both the injured

18

minor and the parents, but double recovery is not permitted.")
(citation omitted); *White v. Moreno Valley Unified Sch. Dist.*, 226 Cal.
Rptr. 742, 745-46 (Cal. Ct. App. 1986) (same); *Scott Cty. Sch. Dist. 1
v. Asher*, 324 N.E.2d 496, 499 (Ind. 1975) (same); *Boley*, 905
S.W.2d at 90 (same); *Lopez v. Sw. Cmty. Health Servs.*, 833 P.2d
1183, 1192 (N.M. Ct. App. 1992) (same); *State ex rel. Packard v.
Perry*, 655 S.E.2d 548, 561 (W. Va. 2007) (same).

¶ 30     However, the supreme court appears to have reaffirmed the
common law rule in *Elgin v. Bartlett*, 994 P.2d at 416, stating that
"[u]nder Colorado law, parents can maintain a derivative action for
certain types of damages they incur as a result of their child's
injury." Those damages include economic damages "such as
reimbursement for medical and other expenses incurred because of
the child's injuries, loss of household and similar services that the
injured child would have rendered during his or her minority, and
loss of the child's earning capacity during minority." *Id.* at 416 n.3.
According to the court, "[c]laims for derivative damages turn upon
the right of the injured person to recover and are subject to the
same defenses available to the underlying claims; nonetheless, they
are separate from the claims of the injured person." *Id.* at 416.

¶ 31    While we may believe the better-reasoned result is that of those states that allow both the parents and the injured minor the right to recover pre-majority expenses (as long as there is no double recovery), we are bound by the decisions of the Colorado Supreme Court. *Averyt v. Wal-Mart Stores, Inc.*, 2013 COA 10, ¶ 35. Accordingly, we conclude that under the current state of the law of Colorado, only Naomi's parents have the right to seek pre-majority medical expenses for Naomi's injury.

3.    The Statute of Limitations and Relinquishment of a Parent's Claim for Pre-Majority Expenses

¶ 32    Although the common law rule still applies in Colorado, the supreme court has recognized that a parent may relinquish his or her right to a minor's pre-majority damages, *Powell*, 76 Colo. at 7-8, 227 P. at 839, and so we must determine if Naomi's parents did, or could, relinquish that right in this case.

¶ 33    First, we note that the act of filing this suit as next friend does not establish relinquishment by Naomi's parents. *Wales*, 164 Colo. at 172, 433 P.2d at 496. Other jurisdictions have concluded that when a parent files suit as next friend, or testifies on behalf of the minor, the parent has relinquished the right to seek recovery on

20

those pre-majority damages. *See Alaskan Vill., Inc. v. Smalley ex rel. Smalley*, 720 P.2d 945, 950 (Alaska 1986) (holding a parent "may impliedly waive [his or] her right to recover in favor of the child by failing to object when the child sues for those expenses or by testifying on the child's behalf"); *Lasselle v. Special Prods. Co.*, 677 P.2d 483, 486-87 (Idaho 1983) (same); *Ky. Serv. Co. v. Miracle*, 56 S.W.2d 521, 522 (Ky. 1933) (same); *Lane v. Webb*, 220 So. 2d 281, 285 (Miss. 1969) (same); *Bagyi v. Miller*, 210 N.E.2d 887, 890 (Ohio Ct. App. 1965) (same).

¶ 34    However, those cases do not address whether relinquishment is appropriate when the statute of limitations has expired on a parent's claim. In *Elgin*, our supreme court held that a minor's disability does not toll a parent's derivative claims based on injury to that minor. 994 P.2d at 416-17. The court concluded that "[a] vast majority of federal and state courts agree that the minor's disability does not toll the statute of limitations applicable to the parents' separate claims, although such claims are derivative in nature." *Id.* at 417; *see, e.g., Garay v. Overholtzer*, 631 A.2d 429, 438 (Md. 1993) (collecting cases).

¶ 35    While those jurisdictions where the common law rule has been abandoned have concluded that a minor's disability tolls the statute of limitations on pre-majority economic damages (because the minor owns a right to that claim along with his or her parents and thus the statute is tolled as to his or her claim), we are compelled to conclude that under current Colorado law, parents may not relinquish their claims to a minor after those claims are barred by the statute of limitations. *See Elgin*, 994 P.2d at 417; *see also Hutto v. BIC Corp.*, 800 F. Supp. 1367, 1372 (E.D. Va. 1992) ("To allow an assignment of a claim from an adult to an infant to somehow extend the statute of limitations (in this case by tolling) defeats the purpose of a limitations period."); *Rose v. Hamilton Med. Ctr., Inc.*, 361 S.E.2d 1, 2 (Ga. Ct. App. 1987) (concluding that parents could not relinquish their right to recover pre-majority medical expenses to minor "as it is uncontroverted that the parents' right to recover medical expenses on his behalf had been extinguished by operation of law when they failed to exercise that right within the two-year statutory period"); *Brown v. Jimerson*, 862 P.2d 91, 94 (Okla. Civ. App. 1993) (same).

¶ 36    Naomi contends that the appointment of a conservator somehow entitled her to advance her parents claims.  But as *Elgin* makes clear, the claims of the parents and the child are separate, even where a parent is acting as next friend.  994 P.2d at 416.  Thus, her parents owned the claim for pre-majority medical expenses and were required to assert that claim not later than two years after they incurred the expenses.  *See* § 13-80-102.5, C.R.S. 2016 (limitation of medical or health care actions).

¶ 37    Here, it is undisputed that Naomi filed her suit long after her parents' claim for pre-majority damages was extinguished by operation of the statute of limitations.  Therefore, we conclude that it was not possible for her parents to relinquish that claim to Naomi, and the trial court erred in holding to the contrary.  Accordingly, the portion of the judgment awarding Naomi pre-majority damages comprising past medical expenses and future medical expenses to her age of majority must be reversed.

4.    No Other Reasons Support Affirming the Trial Court's Ruling

¶ 38    The trial court provided two additional reasons for Naomi to collect pre-majority economic expenses: (1) that she had incurred or would be responsible for those expenses and (2) that she was the

real party in interest because she would incur pre-majority expenses.

¶ 39     First, Naomi presented no proof that she was the guarantor on any medical bills or that she had actually incurred or paid bills on her own behalf.  "Whether a party has assumed a duty is a mixed question of law and fact."  *E. Meadows Co. v. Greeley Irrigation Co.*, 66 P.3d 214, 218 (Colo. App. 2003).  Here, the facts relied on by the trial court are undisputed.  But those facts do not support a finding that Naomi incurred medical expenses.  Indeed, we perceive no relation between the court's findings — which included facts such as "Naomi's parents and [her] expert witnesses testified Naomi received past medical care and other health care services," "[t]he parties stipulated that the reasonable past medical and other healthcare expenses . . . were $557, 823.60," and "Naomi's parents and [her] expert witnesses testified Naomi will need future ongoing medical care and healthcare services prior to the age of majority" — and its ultimate conclusion that Naomi incurred pre-majority medical expense.

¶ 40     And while Naomi argues that the damages instruction provided to the jury states damages are "expenses the plaintiff, as a

minor, has paid for or for which she is personally liable" and, therefore, she incurred those expenses, the special verdict forms contain no finding whatsoever that Naomi incurred expenses. In spite of the damages instruction provided to the jury, there is no record support for a conclusion that Naomi incurred medical expenses.

¶ 41     Second, the common law (and thus Colorado) rejects the idea that a minor is the real party in interest to recover his or her pre-majority economic damages by creating a separate right to sue for those damages in the minor's parents. *See Kinsella*, 826 P.2d at 435. Consequently, we conclude that the court's ruling cannot be affirmed on either of these bases.

### III.    Remaining Contentions

¶ 42     The Hospital presents two remaining contentions: (1) that irrespective of the evidence of Medicaid and private insurance benefits, Naomi did not establish good cause to exceed the cap; and (2) she received a duplicate award for future medical care and lost future earnings. We disagree.

### A. Naomi Established Good Cause to Exceed the Cap

¶ 43   We review a trial court's determination of good cause for an abuse of discretion. *Wallbank*, 140 P.3d at 179. A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *In re Estate of Fritzler*, 2017 COA 4, ¶ 6.

¶ 44   Section 13-64-302 does not define "good cause" or "unfairness." *Wallbank*, 140 P.3d at 180. Good cause is a legally sufficient reason or a substantial or legal justification. *Id.* Unfairness is "marked by injustice, partiality, or deception." *Id.* (quoting Webster's Third New International Dictionary 2494 (1986)).

¶ 45   "[A] court may exercise its discretion to consider factors it deems relevant when determining whether a movant qualifies for the . . . exception to the cap." *Id.* at 180-81. "The trial court may not make that determination in a vacuum, but must necessarily consider the circumstances in each case." *Id.* at 181.

¶ 46   Here, we perceive no abuse of discretion by the trial court in concluding that Naomi established good cause to exceed the damages cap in section 13-64-302(1)(b). The court considered a multitude of factors in reaching its determination, including past

and future medical expenses, the purpose of the cap, the nature and degree of the injuries, the strength and certainty of the evidence of damages, Naomi's age, the amount and composition of the jury verdict, whether there is an overlap in the damage award, Naomi's life expectancy, lost future earnings and earnings capacity, and particular needs and losses. Reviewing the trial court's reasoning, we are satisfied that its decision is not manifestly arbitrary, unreasonable, or unfair, and it is not a misapplication of the law. Accordingly, we do not disturb the court's finding that Naomi established good cause to exceed the damages cap.

## B. Naomi Did Not Receive a Duplicate Award for Future Medical Care and Future Lost Earnings

¶ 47 We review a court's determination that a plaintiff has not received a duplicate award for an abuse of discretion. *Vitetta*, 240 P.3d at 329. In *Vitetta*, a division of this court affirmed a trial court's determination that an award for future life care included amounts for loss of future income. *Id.* We likewise conclude there is record support for the trial court's findings that Naomi's damage award for future medical care does not overlap with her future lost earnings award. Because the Hospital has not shown any abuse of

27

discretion on the part of the court in concluding there is no overlap, we discern no reason to reverse that determination.

## IV. Conclusion

¶ 48     The judgment is reversed as to the $2,461,735.60 awarded to Naomi for her pre-majority economic damages.  The judgment is affirmed in all other respects.  The case is remanded to the trial court for recalculation of the total amounts owed by the Hospital to Naomi.

JUDGE TAUBMAN and JUDGE NAVARRO concur.